**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEAN YVES BREZILIEN, aka Jean
Yves Brezilieh,

*Petitioner,*

v.

ERIC H. HOLDER, Attorney General,
*Respondent.*

No. 06-73693

Agency No.
A071-894-056

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued July 15, 2008
Submitted May 5, 2009
San Francisco, California

Filed May 12, 2009
Amended June 18, 2009

Before: Richard A. Paez and Marsha S. Berzon,
Circuit Judges, and Harold Baer, Jr.,* District Judge.

Opinion by Judge Paez

---

*The Honorable Harold Baer, Jr., Senior United States District Judge
for the Southern District of New York, sitting by designation.

## COUNSEL

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Peter D. Keisler, Richard M. Evans, and David E. Dauenheimer, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for the respondent.

## ORDER

Respondent's motion to amend the court's opinion is GRANTED. The opinion, *Brezilien v. Holder*, ___ F.3d ___, 2009 WL 1297951 (9th Cir. May 12, 2009), is revised as follows. Delete footnote three, and substitute the following footnote in its place:

> Effective September 25, 2002, the Department of Justice implemented new rules reforming the BIA process. These rules provide, inter alia, that: (1) the Board will not engage in de novo review of findings of fact determined by the immigration judge; and (2) except for the taking of administrative notice of commonly known facts, the Board will not engage in factfinding in the course of deciding appeals. See 8 C.F.R. § 1003.1(d)(i)(iv). In contrast to these substantive limitations on factfinding, "[t]he Board may review questions of law, discretion, and judgment on all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii).

The filing of this order shall not extend the time to file a petition for rehearing. Fed. R. App. Pro. 40.

## OPINION

PAEZ, Circuit Judge:

Petitioner Jean Yves Brezilien, a native and citizen of Haiti, petitions for review of the final decision of the Board of

Immigration Appeals ("BIA") sustaining the government's appeal of an Immigration Judge's ("IJ") grant of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ initially found Brezilien removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien who had been convicted of a crime involving moral turpitude. Brezilien, appearing *pro se*, conceded removability but applied for asylum, withholding of removal, and CAT relief. He asserted a fear of future persecution on account of his ties to former Haitian president Jean-Bertrand Aristide and the Lavalas political party, and a fear of torture on account of his criminal status in the United States, which he argued would subject him to indefinite detention in deplorable conditions in Haiti.

On three separate occasions, the IJ granted Brezilien relief from removal. The government appealed the IJ's rulings to the BIA, and each time the BIA reversed the IJ's decision. The BIA held that Brezilien's fear of future persecution was speculative, that he could avoid harm through internal relocation, and that there was no pattern or practice of persecution of Aristide or Lavalas supporters in Haiti.

All of the BIA's decisions leading up to its final decision are properly before us in this proceeding. Brezilien raises a number of challenges to the BIA's rulings, some of which are unexhausted or the BIA failed to address, and therefore we do not reach the merits of those arguments. We agree, however, with Brezilien's main argument that the BIA violated its own regulation—8 C.F.R. § 1003.1(d)(3)(i)-(iii)—when it engaged in factfinding to deny Brezilien's asylum, withholding, and CAT claims. The BIA also improperly reversed the IJ's factual finding, without applying the "clearly erroneous" standard of review, that Brezilien and his family suffered persecution because of their ties to the Lavalas party. The BIA's errors of law require that we grant the petition and remand for further proceedings. In light of our disposition on this issue, we need not address Brezilien's remaining chal-

lenges to the BIA's disposition of his asylum and withholding claims.

## I.

### *Flight from Haiti*

Brezilien is a native and citizen of Haiti. From 1989 until he fled Haiti in 1991, Brezilien was an active supporter of former Haitian president Aristide.[1] He distributed leaflets and attended rallies for Aristide, wore an Aristide T-shirt that had been personally autographed by Aristide, and posted many pictures of Aristide in his neighborhood, including one in front of his family home. He also canvassed the countryside and urban neighborhoods before and on the day of the 1990 election, garnering support for Aristide. When Brezilien stood at the polls on election day and showed voters how to vote for Aristide's party, several government soldiers observed his activities.

Brezilien's family was associated with Aristide and Aristide's party, Lavalas, primarily through Brezilien's father Remon. Remon had known Aristide from a young age and served as his personal bodyguard during his election campaign and presidency. Two of Brezilien's older brothers, Corlod and Renoll, also worked for Aristide. As a 15-year-old boy, Brezilien sometimes accompanied his father to work and thus was seen with Aristide.

On September 28, 1991, the night before the coup d'etat that displaced Aristide, Brezilien was at home in Port-au-

---

[1] Jean-Bertrand Aristide was democratically elected President of Haiti in 1990 and took office in February 1991. He resigned after a no-confidence vote by Parliament in September 1991 and spent several years in exile before returning to Haiti in October 1994 to complete his term. After Aristide left office in 1996, he created a new political party, Lavalas. Lavalas won the 2000 elections, and Aristide served again as President from 2001 until 2004, when he was ousted by rebels and forced to leave Haiti.

Prince with his father and his younger brother, Gerald. His father was not on duty that day as Aristide's bodyguard. Insurgent soldiers known as Ton Ton Macoutes, who would eventually oust Aristide, shot at Brezilien's house that morning. In the evening, Brezilien's father received phone calls from friends warning him to stay at home. Later that night, the soldiers returned and shot at the house again. When Brezilien's father opened the door to see who was outside, the Ton Ton Macoutes shot and killed him.

Brezilien and Gerald hid in the basement while the Ton Ton Macoutes, who knew the boys were inside, continued firing at the house. After spending a day in the basement, Brezilien came out when he heard a neighbor talking outside. The neighbor allowed Brezilien and Gerald to spend that night at his house, and the next day drove them forty kilometers to Leogane, where they stayed with the neighbor's relative for one month. After about one month of living in fear and hiding from the rebel military's search for Aristide supporters, Brezilien and his brother fled by bus to a remote village, St. Louis.

On November 13, 1991, when Brezilien was 16 years old, he and Gerald left Haiti in a boat with 67 other people. After two or three days, the U.S. Coast Guard intercepted the boat and transported its occupants to the Guantanamo Naval Base in Cuba. Immigration officials interviewed Brezilien and paroled him into the United States. He was subsequently granted asylum on June 12, 1993 and lawful permanent resident status in 1994.

### *1993-2003: Visits to Haiti*

Brezilien subsequently returned to Haiti three times, each time for less than two weeks. In 1998, Brezilien traveled to Haiti because two of his older brothers had been killed by the Ton Ton Macoutes. His mother told him that they had been working in a political office for Rene Preval and Aristide in Port-au-Prince. According to Brezilien's mother, one of his

brothers was gunned down as he entered the office, and then the Ton Ton Macoutes went inside the office and shot his other brother. No one was arrested in connection with the murders.

Although he was afraid to do so, Brezilien returned to Haiti for his brothers' funerals. Fearing that someone would recognize and kill him, Brezilien dressed as a woman after his arrival in Haiti. Because the Ton Ton Macoutes knew that Brezilien's mother and his deceased father were affiliated with Aristide, he felt that he could not safely stay at his mother's house. Brezilien stayed instead with his aunt, who was not well-known, and did not travel to Port-au-Prince at all. Brezilien attended his brothers' funerals, both held on the same day, though he felt that it was dangerous for him to do so. When he left Haiti, Brezilien again took precautions so as not to be recognized.

Despite ongoing political turmoil in Haiti, Brezilien returned on two other occasions, in 2000 and 2003, to visit his mother, who was hospitalized with heart problems. Although Brezilien did not want to return to Haiti, his mother thought she was going to die, and asked him to come see her. During both trips, Brezilien disguised himself at the airport. He stayed with his aunt and uncle and did not go out, fearing that his life was in danger.

### Arizona Criminal Conviction

On February 23, 2000, following an encounter with Sonya White, who is the mother of Brezilien's United States citizen daughter, Brezilien was charged with aggravated assault under Arizona Revised Statutes Sections 13-1204(A)(11), (B), -1203(A)(1), -1001, -3601(A), -701, -702, -702.01 and -801 (2000). He ultimately pled guilty to attempted aggravated assault and was sentenced to a deferred period of four months in Maricopa County Jail with furlough consideration and three years probation, which he completed in one year and six

months. Thereafter, Brezilien's conviction was reduced from a felony to a misdemeanor.

When Brezilien returned from Haiti in July 2003 after visiting his ailing mother, he applied for admission as a returning lawful permanent resident at the Miami International Airport. He was told to report to the Department of Homeland Security ("DHS") office in Phoenix with court-certified copies of his criminal record. When Brezilien reported to DHS, he was taken into custody and issued a Notice to Appear, which charged him as removeable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien who has been convicted of a crime involving moral turpitude. Brezilien admitted the factual allegations in the Notice to Appear, but applied for asylum, withholding of removal, and relief under CAT, arguing that he would be subject to persecution and torture if returned to Haiti.

### Additional Facts Relevant to Asylum and CAT Claims

Brezilien testified before the IJ in 2003 that it would be dangerous for him to live anywhere in Haiti. He testified that if he were to return, the Ton Ton Macoutes would kill him, as they had killed his father and brothers. Brezilien further testified that although many of the Ton Ton Macoutes left Haiti, some of them remain, hoping to return to power. Brezilien fears that they will recognize him as a Lavalas supporter. Brezilien continues to support Lavalas and believes that Aristide's reelection in 2000 represented a positive change for the people of Haiti.

Brezilien also fears that if he is removed to Haiti, he will be imprisoned upon his return because of his assault conviction, and will be killed in prison by incarcerated affiliates of the Ton Ton Macoutes.

While Brezilien was in custody, he was unable to speak with his family in Haiti. When Brezilien spoke in September

2005 with his younger brother Gerald (who lives in Phoenix), he learned that his two older brothers, Osni and Jean Lobar, are in the Dominican Republic. The whereabouts of Brezilien's mother, sister (Jeana), and brother (Osnar) are unknown.

### First Hearing and Appeal

On August 22, 2003, Brezilien appeared before an IJ for his initial asylum hearing. Brezilien requested a continuance to consult with an attorney, which the IJ granted. At his next hearing, on September 4, 2003, Brezilien appeared without counsel, though he stated that a lawyer with whom he had spoken told him she would be at the hearing. The IJ decided to proceed in her absence because Brezilien was not on his list of detainees represented by counsel. Upon questioning by the IJ, Brezilien admitted that he was a citizen of Haiti who had been granted asylum in 1993 and that he had been convicted of attempted aggravated assault in 2000. On the basis of these two admissions, the IJ found Brezilien removable as charged. Although Brezilien had previously been granted asylum, he reapplied for asylum, and also applied for withholding of removal and CAT relief. On December 17, 2003, the IJ granted Brezilien's second application for asylum. The IJ found that because he had admitted the factual allegations in the Notice to Appear, Brezilien had conceded the charge of removability, a finding he now contests. The IJ then found by clear and convincing evidence that the removal charge had been sustained. Nevertheless, the IJ noted that Brezilien had been granted asylum in 1993, and at that time had established a well-founded fear of persecution. The IJ determined that the government bore the burden of showing that circumstances in Haiti had changed so dramatically that Brezilien's well-founded fear was no longer valid.

The IJ found that Brezilien was a credible witness. Because Brezilien had been in Haiti when the coup occurred and when the Ton Ton Macoutes had stormed his house, kidnapped and

killed his father, and fired shots into the house, the IJ found that Brezilien was entitled to the presumption of future persecution upon which his previous grant of asylum had been based. The IJ also assessed the record and found that Brezilien had suffered past persecution. The IJ granted Brezilien asylum and withholding of removal, but did not rule on the application for CAT relief.

The government appealed, and on September 8, 2004, the BIA reversed the IJ's decision. Rejecting the IJ's determination that Brezilien had suffered past persecution, the BIA stated that its review of the record revealed no evidence that Brezilien had ever been the intended target of harm, and that therefore he had no objective fear of persecution. Without reversing the IJ's credibility finding, the BIA remanded to the IJ to allow Brezilien to demonstrate that changed country conditions qualified him for asylum, withholding of removal, and CAT relief.

### Second Hearing and Appeal

On remand, the IJ once again found Brezilien credible and examined his testimony in light of changed country conditions in Haiti. The IJ concluded that Brezilien had established a well-founded fear of persecution on account of his political opinion or imputed political opinion. In so ruling, the IJ did not specifically consider whether it would be reasonable for Brezilien to relocate within Haiti. On December 16, 2004, the IJ again granted asylum and withholding of removal, and again declined to rule on the application for CAT relief.

The government appealed, and on November 21, 2005, the BIA again reversed. The BIA noted that the IJ provided no analysis as to whether Brezilien would be identified as a Lavalas supporter and concluded that Brezilien had failed to demonstrate that he would be recognized as such. Relying on its determinations that Brezilien (1) had failed sufficiently to explain how anyone would recognize him after approximately

12 years outside of Haiti, (2) had not shown that the deaths of his brothers and aunt were tied to their political involvement with the Lavalas party, and (3) did not claim that his mother or brother had been harmed on account of their involvement with the Lavalas party, or that Brezilien had been threatened or harmed during his trips to Haiti since his original grant of asylum, the BIA found that Brezilien had failed to demonstrate a well-founded fear of persecution in Haiti. The BIA further found that Brezilien could avoid identification as a Lavalas supporter by living outside of Port-au-Prince. The BIA reversed the grant of asylum and withholding of removal and remanded to the IJ for consideration of other forms of relief.

### Third Hearing and Appeal

At his third hearing, Brezilien asked the IJ to consider his asylum and withholding of removal claims in light of worsening conditions in Haiti. The IJ declined, noting that the BIA had already reversed his two prior asylum rulings. On January 25, 2006, the IJ issued an oral decision granting Brezilien's application for CAT relief. The IJ found that criminal deportees who are returned to Haiti are detained for an indeterminate amount of time, and that the conditions of detention in a Haitian prison could amount to torture.

Both parties appealed the IJ's January 25, 2006 decision to the BIA. The BIA reversed the IJ's grant of CAT relief, finding that such relief could not be based solely on prison conditions in Haiti and the indefinite detention of detainees, in light of *In re J-E-*, 23 I. & N. Dec. 291 (BIA 2002) and *Theagene v. Gonzales*, 411 F.3d 1107 (9th Cir. 2005). The BIA also rejected Brezilien's argument that he would be targeted for torture by the authorities while detained due to his political affiliations, as well as his argument that worsening country conditions qualified him for asylum because, in its view, Brezilien had failed to establish how he would be recognized throughout the country as an Aristide supporter. The BIA

remanded to the IJ to enter a final order of removal[2] that encompassed all of the IJ's and BIA's decisions. The IJ entered the order on June 30, 2006. Brezilien timely petitioned for review.

## II.

### *Jurisdiction*

Our jurisdiction to review a final order of removal is governed by 8 U.S.C. § 1252 (2000); Immigration and Nationality Act § 242, *as amended by* the Real ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106, 119 Stat. 231 (May 11, 2005). With respect to asylum, withholding of removal, and CAT claims of a petitioner who was convicted of an offense covered by § 1252(a)(2)(C), we have jurisdiction to review the denial of an asylum application and to review the denial of withholding of removal and CAT relief when a petitioner raises questions of law, including mixed questions of law and fact, or constitutional claims. *Morales v. Gonzales*, 478 F.3d 972, 978-80 (9th Cir. 2007). Moreover, as to "factual issues, when an IJ does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the jurisdiction-stripping provisions . . . apply to divest this court of jurisdiction." *Id*. at 980; *see also Arteaga v. Mukasey*, 511 F.3d 940, 942 n.1 (9th Cir. 2007).

Notwithstanding any limitations on judicial review over discretionary determinations set forth in § 1252(a)(2)(B), section 106 of the Real ID Act explicitly provides for judicial review over constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(2)(D) (as amended by Real ID Act § 106(a)(1)(A)(iii)); *see also Fernandez-Ruiz v. Gonzales*,

---

[2]The BIA remanded the case to the IJ to issue an order of removal pursuant to our then-holding in *Molina-Camacho v. Ashcroft*, 393 F.3d 937 (9th Cir. 2004), *overruled by Lolong v. Gonzales*, 484 F.3d 1173, 1176-78 (9th Cir. 2007) (en banc).

410 F.3d 585, 587 (9th Cir. 2005), *as adopted by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc) (explaining that the Real ID Act restored judicial review of constitutional questions and questions of law presented in petitions for review of final removal orders). Accordingly, we have construed the jurisdictional grant of 8 U.S.C. § 1252(a)(2)(D) to encompass constitutional questions, pure questions of law, and the "application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam).

The government contends that we lack jurisdiction to consider Brezilien's claims because (1) Brezilien has failed to exhaust his administrative remedies as required by 8 U.S.C. § 1252(d)(1), and/or (2) there is no administrative decision to review. *See INS v. Ventura*, 537 U.S. 12 (2002). We address these arguments with respect to each of Brezilien's claims as appropriate.

### *Standard of Review*

We review questions of law de novo. *Chavez-Perez v. Ashcroft*, 386 F.3d 1284, 1287 (9th Cir. 2004). We review the BIA's factual findings for substantial evidence. *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004).

Where the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our "review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). Where the BIA conducts a de novo review, "[a]ny error committed by the IJ will be rendered harmless by the Board's application of the correct legal standard." *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995).

### III.

Brezilien raises six challenges to the IJ's final order of removal. He argues that (1) the IJ violated his due process rights when he found Brezilien removable without first assuring that Brezilien had waived his right to counsel; (2) the BIA erred as a matter of law by refusing to grant Brezilien, as an alien previously granted asylum, a presumption of a well-founded fear of persecution and refusing to shift the burden of showing changed country conditions to the government; (3) the BIA violated 8 C.F.R. § 1003.1(d)(3)(i) by engaging in its own factfinding and using an incorrect legal standard to reverse the IJ's factual findings; (4) the BIA applied an incorrect legal standard in its analysis of Brezilien's asylum claim; (5) based on the undisputed facts in the record, the BIA erred as a matter of law in reversing the IJ's grant of asylum; and (6) the IJ violated Brezilien's due process rights (as well as 8 C.F.R. § 1240.11(a)(2)) by failing to inform Brezilien of his eligibility for a waiver of inadmissibility.

### IV.

We begin with two preliminary challenges to the BIA's rulings: a due process challenge to the first IJ hearing, and a challenge to the BIA's failure to apply a regulatory presumption of well-founded fear. Because these issues are not properly before us, we do not reach the merits of these claims. We dismiss the first as unexhausted, and remand the second to the BIA to address in the first instance. We next address Brezilien's principal argument, that the BIA engaged in improper factfinding and exceeded its scope of review to overturn key factual findings made by the IJ. Because we agree with Brezilien as to this claim, we grant the petition and remand for further proceedings.

### *Due Process*

**[1]** Brezilien argues that the IJ violated his right to due process at his first hearing by finding him removable without first

assuring that Brezilien had waived his right to counsel. Brezilien further asserts that because it was clear that he was attempting to assert his right to counsel, the IJ should not have proceeded without giving Brezilien an opportunity to appear with counsel. Because Brezilien failed to exhaust his administrative remedies as to this alleged procedural error, we lack jurisdiction to review it. *See* 8 U.S.C. § 1252(d)(1); *Barron v. Ashcroft*, 358 F.3d 674, 677-78 (9th Cir. 2004). We dismiss the petition for review as to this claim.

**[2]** Brezilien also argues that the IJ violated his due process rights by failing to inform him of his eligibility for a waiver of inadmissibility. This claim was raised for the first time in Brezilien's petition for review. We lack jurisdiction to consider it because Brezilien failed to exhaust his administrative remedies. 8 U.S.C. § 1252(d)(1); *Barron*, 358 F.3d at 677-78. We therefore dismiss this due process claim.

### Presumption of Well-Founded Fear

**[3]** Brezilien next argues that the DHS regulations pertaining to termination of asylum status—8 C.F.R. §§ 208.22 and 208.24(g)—apply in removal proceedings, and that, absent termination of a prior grant of asylum, there is a rebuttable presumption that a petitioner has a well-founded fear of future persecution. He contends that the BIA erred in declining to apply this presumption in his case. Although we conclude that we have jurisdiction to review this claim because Brezilien sufficiently raised it before the BIA and thus properly exhausted his administrative remedies, *see Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006), the BIA never addressed it. "[I]t goes without saying that IJs and the BIA are not free to ignore arguments raised by a petitioner." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005). We therefore remand this question to the BIA to address it in the first instance. *See Ventura*, 537 U.S. at 16; *Lopez v. Ashcroft*, 366 F.3d 799, 806 (9th Cir. 2004).

### *Improper Factfinding*

**[4]** Brezilien argues that the BIA improperly conducted its own factfinding when it reversed the IJ's grant of asylum and withholding of removal, in violation of 8 C.F.R. § 1003.1(d)(3)(i).[3] The regulation provides that the BIA "will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). The regulation further states that, except in cases where judicial notice is appropriate, the BIA may not engage in factfinding to resolve an appeal, and must remand to the IJ if additional factfinding is necessary. 8 C.F.R. § 1003.1(d)(3)(iv); *see also In re S-H-*, 23 I. & N. Dec. 462, 464 (BIA 2002) ("[T]he Board must defer to the factual determinations of the Immigration Judge in the absence of clear error.").

**[5]** According to Brezilien, the BIA engaged in its own factfinding by finding against Brezilien as to whether (1) Brezilien was an intended target of persecution during the September 1991 attack on his home; (2) the Ton Ton Macoutes were responsible for killing Brezilien's two older brothers; (3) the deaths of Brezilien's two older brothers were tied to their work for Lavalas; (4) the murder of Brezilien's paternal aunt was tied to her political involvement with Lavalas;

---

[3]Effective September 25, 2002, the Department of Justice implemented new rules reforming the BIA process. These rules provide, inter alia, that: (1) the Board will not engage in de novo review of findings of fact determined by the immigration judge; and (2) except for the taking of administrative notice of commonly known facts, the Board will not engage in factfinding in the course of deciding appeals. See 8 C.F.R. § 1003.1(d)(i)(iv). In contrast to these substantive limitations on factfinding, "[t]he Board may review questions of law, discretion, and judgment on all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii).

(5) Brezilien could avoid identification in Haiti as an Aristide/ Lavalas supporter; and (6) Brezilien could safely relocate in Haiti. Brezilien argues that these are factual determinations that the BIA is not authorized to make. With regard to the first five issues, we agree. We conclude, however, that the BIA has not clearly resolved whether internal relocation is a legal or factual question. *Compare Matter of D-I-M-,* 24 I. & N. Dec. 448, 451 (BIA 2008) (remanding the question of internal relocation to the IJ so that it could properly consider the evidence and make a factual determination) *with Matter of A-S-B-*, 24 I. & N. Dec. 493, 497-98 (BIA 2008) (declaring that future predictions about what may occur when an alien is returned to his country were legal rather than factual determinations that the BIA was authorized to make).

**[6]** The government argues that Brezilien never raised a challenge to the BIA's application of its review standard before the BIA itself. The record, however, does not support this assertion. In his final brief before the BIA, Brezilien specifically addressed the BIA's authority to reconsider *sua sponte* factual and legal findings from its prior decisions. He argued that the BIA did have such power and that it should exercise that power in its third review of his case because the BIA had previously issued factual and legal findings contrary to the record, regulations, and case law. He also cited 8 C.F.R. § 1003.1(d)(3)(i)-(iii) in discussing the standard of review the BIA applies to the IJ's factual findings. These points were "sufficient to put the BIA on notice . . . and the agency had an opportunity to pass on this issue." *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). Accordingly, we conclude that Brezilien exhausted this claim.

**[7]** The government further argues that we have no authority to review this claim because there is no prior agency decision resolving it in the first instance. The government is correct that interpretation of BIA regulations is "a matter that [is] place[d] primarily in agency hands." *Ventura*, 537 U.S. at 16. However, it is clear from the text of 8 C.F.R.

§ 1003.1(d)(3)(i) that where the IJ has made a factual finding, the BIA has very limited authority to revisit that finding. Nor is 8 C.F.R. § 1003.1(d)(3)(iv) ambiguous as to its treatment of the question posed here: where the IJ has not made a necessary factual finding, the regulation requires the BIA to remand the factual inquiry to the IJ rather than making its own factual finding on the matter.

[8] The IJ found Brezilien's testimony credible, including his testimony about his family's connections to Aristide and Lavalas and Brezilien's own political activities. The BIA affirmed this credibility determination. The IJ never made a factual finding as to whether Brezilien and his brothers had been targeted for persecution based on their political ties, whether Brezilien would be identified as an Aristide/Lavalas supporter, and whether he could avoid being identified. Nor did the IJ determine as a matter of law whether Brezilien could safely relocate to the outer provinces if removed to Haiti. Despite the absence of rulings by the IJ on these issues, the BIA did not remand to the IJ to address them in the first instance. The BIA also reversed the IJ's factual findings with regard to Brezilien's and his family's persecution for political opinion, without determining whether the IJ's findings were clearly erroneous. Based on the plain language of the regulations at issue, the BIA violated 8 C.F.R. § 1003.1(d)(3)(i)'s prohibition against making de novo factual findings, and violated 8 C.F.R. § 1003.1(d)(3)(ii)-(iii)'s standard of review that governs the IJ's factual findings.

[9] Because the BIA's error materially affected its decisions to reverse the IJ's second grant of asylum and withholding of removal, as well as the subsequent grant of CAT relief, we vacate the BIA's decision. The BIA improperly relied upon its own factual findings to conclude that Brezilien had not established a well-founded fear of future persecution, had not established that it is more likely than not that he will suffer persecution in Haiti, and that he could safely relocate within Haiti to avoid persecution. The BIA's decisions to

vacate the IJ's second grant of asylum and withholding of removal thus depended on the agency's improper factual findings. Similarly, the BIA relied, at least in part, on its factual finding that Brezilien would not be recognized as an Aristide/ Lavalas supporter to overturn the IJ's grant of CAT relief. We thus vacate the BIA's denial of Brezilien's applications for asylum, withholding of removal, and CAT relief, and remand for further proceedings.

[10] As to whether internal relocation is a factual or legal issue, we agree with the parties that there is tension between *Matter of D-I-M-* and *Matter of A-S-B-*. *Matter of D-I-M-* suggests that it is a question of fact subject to clear error review. After *Matter of A-S-B-*, however, there is some question whether *Matter of D-I-M-* can be read to hold clearly that internal relocation is a question of fact, subject to clear error review by the BIA. A fair reading of *Matter of A-S-B-* suggests that the issue of internal relocation is ultimately a question of law subject to de novo review by the BIA. This uncertainty in the BIA's case law should be resolved by the BIA in the first instance. *See Ventura*, 537 U.S. at 16; *Negusie v. Holder*, 129 S.Ct. 1159, 1164 (2009). We therefore remand this issue to the BIA for further clarification, if necessary.

Because we remand this matter to the BIA, we need not address Brezilien's claims that the BIA used an incorrect legal standard in its analysis of his asylum claim, and that the BIA erred as a matter of law in reversing the IJ's grant of asylum.

## V.

Based on his factual findings, the IJ twice granted asylum to Brezilien, in addition to the previous grant of asylum in 1993 by an asylum officer. The IJ also granted withholding of removal and CAT relief. These favorable rulings were based on the substantial record evidence that it was more likely than not that Brezilien would be persecuted if he were deported to Haiti. The BIA improperly found additional facts not in the

record, and used these facts to support its decision to overturn the IJ's grant of asylum, withholding of removal, and CAT relief.

We remand to the BIA to decide the case on the basis of the IJ's factual findings, or, in the alternative, to remand to the IJ with instructions to conduct additional factfinding relating to Brezilien's claims for relief as appropriate. We also remand to the BIA to address in the first instance, if necessary, whether 8 C.F.R. §§ 208.22 and 208.24(g) apply in removal proceedings, and whether internal relocation is a question of fact subject to clear error review or a question of law subject to de novo review. Accordingly, Brezilien's petition is DISMISSED in part, GRANTED in part, and REMANDED for further proceedings consistent with this opinion.