FILED
United States Court of Appeals
Tenth Circuit

May 4, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OMAR MOHAMED ADAM,
a/k/a Ibrahim Adan Muhumed,

      Petitioner,

v.

LORETTA E. LYNCH,
United States Attorney General,[*]

      Respondent.

No. 14-9577
(Petition for Review)

**ORDER AND JUDGMENT**[**]

Before **BACHARACH**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

     Petitioner Omar Mohamed Adam claims to be a native and citizen of Ethiopia,

although he entered this country from Kenya using a Kenyan passport identifying

him as Ibrahim Adan Muhumed. He petitions for review of an order by the Board of

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Loretta E. Lynch is substituted for Eric H. Holder, Jr., as the respondent in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's (IJ) decision denying his application for asylum.[1] Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we deny the petition.

## I. Factual and Procedural Background

Mr. Adam was granted a visa to enter the United States from Kenya. In his visa application, he identified himself as Ibrahim Adan Muhumed, a native and citizen of Kenya. He entered the United States in July 2008. A few months later, in November 2008, he applied for asylum, claiming to be Omar Mohamed Adam, a native and citizen of Ethiopia.

In his asylum application, Mr. Adam stated that he lived in Ethiopia until 2007. He claimed that he was from the Ogaden region and was ethnic Somali. He further stated that he was a member of the Ogaden National Liberation Front (ONLF). He alleged that he and his family members were persecuted by the Ethiopian government on account of their membership in the Ogaden clan and because they were suspected of supporting the ONLF. Mr. Adam claimed that Ethiopian soldiers attacked him at his house in April 2005, leaving him with scars on his abdomen and right arm from the wounds he suffered during the attack. He also alleged that his mother and brother were killed in an Ethiopian jail in 2006. He

---

[1]     The IJ also denied Mr. Adam's request for restriction on removal and protection under the Convention Against Torture (CAT). Mr. Adam has waived any challenge to the denial of these claims because he does not raise any argument regarding them in his petition for review. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002).

explained that he moved to Kenya in 2007 with his wife and son and then bought a fake passport there in order to travel to the United States. When he came to the United States, his wife and son remained in Kenya.

An asylum officer interviewed petitioner in connection with his application. During the interview, Mr. Adam stated that Ethiopian soldiers raped his wife during the attack at his home.

After the interview, the Department of Homeland Security (DHS) commenced removal proceedings against Mr. Adam, charging him with being removable as an alien who was inadmissible at the time of his entry into the United States. Mr. Adam conceded his removability as charged. He sought relief from removal in the form of asylum, restriction on removal, and CAT protection.

Mr. Adam subsequently submitted two documents to support his claim that he was an Ethiopian citizen—a "Birth Certificate" and an "Identification Card." Admin. R. at 344-51. He asserted that both documents were issued by the Ethiopian government. Both documents listed Mr. Adam's birthdate as May 5, 1980, which was inconsistent with the birthdate listed on his asylum application of May 13, 1980. Both documents indicated that they were issued in 1999.

At the final hearing on his asylum application, Mr. Adam testified that he was attacked by Ethiopian soldiers at his house in 2005 and they stabbed him in the stomach and hand. Mr. Adam also testified that his wife was not harmed during that attack. He testified that he did not remember telling the asylum officer that his wife

had been raped in the 2005 attack and that he didn't know exactly what he had said. Mr. Adam further testified that he was never a member of the ONLF.

He was also asked about the difference in his stated birthdate and the birthdates listed on his Identification Card and Birth Certificate. In response, he testified that the Ethiopian government made a mistake. He also testified that he thought the Identification Card was issued in 2010 because that was when he requested his father to get it for him. He said that the government made a mistake when it noted the document was issued in 1999.

At the end of the hearing, the IJ rendered an oral decision. The IJ concluded that Mr. Adam did not testify credibly in support of his asylum application and therefore he had not established his eligibility for relief. In particular, the IJ noted that Mr. Adam's documents that purported to establish his Ethiopian citizenship appeared to be partially fabricated. Although Mr. Adam produced a witness to corroborate his identity, the witness had not seen Mr. Adam since he was a toddler. The IJ concluded that the witness's prior experience with Mr. Adam was not sufficient to make a reliable identification thirty years later. The IJ further noted inconsistencies between Mr. Adam's asylum application, his interview with the asylum officer, and his testimony at the hearing involving whether he was a member of the ONLF and whether his wife was raped during the alleged altercation in 2005.

The BIA upheld the IJ's adverse credibility finding and dismissed the appeal. Mr. Adam now seeks review of the BIA's decision.

II. Discussion

"We review the BIA's legal determinations de novo and its findings of fact for substantial evidence." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). The BIA's decision is the final order under review, but "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). The agency's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[C]redibility determinations, like other findings of fact, are subject to the substantial evidence test." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). "We may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001).

An alien bears the burden of proving eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). An alien's testimony may be sufficient to sustain his burden of proof, but only if he satisfies the IJ that his testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he is eligible for relief]." *Id*. "Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004) (citation and internal quotation marks omitted).

- 5 -

Mr. Adam contends that the neither the IJ nor the BIA provided specific and cogent reasons for finding him not credible. In upholding the IJ's adverse credibility finding, the BIA determined that it was based "on specific cogent reasons, including significant inconsistencies and omissions in [Mr. Adam's] testimony, asylum application, asylum declaration, asylum interview testimony, and other documents in evidence, as well as demeanor." Admin. R. at 3. We agree that the agency did provide specific and cogent reasons for its adverse credibility determination and that the determination was supported by substantial evidence.

In making a credibility determination, the trier of fact should consider "the totality of the circumstances, and all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii) The trier of fact

> may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility[.]

*Id.*

In finding that Mr. Adam was not credible, the IJ noted specific inconsistencies in the evidence surrounding his identity, and the BIA highlighted some of those inconsistencies in its decision. The IJ also noted specific

- 6 -

inconsistencies between Mr. Adam's statements during his hearing testimony, in his asylum application, and during his asylum interview. The BIA also highlighted some of those inconsistencies in its decision.

First, the BIA noted the inconsistencies in evidence regarding Mr. Adam's identity. To gain entrance to the United States, Mr. Adam presented a Kenyan passport identifying him as Ibrahim Adan Muhumed, bearing his photo, and listing his birth date as May 13, 1972. At the hearing before the IJ, Mr. Adam testified that his real name was Omar Mohamed Adam and that he was born on May 13, 1980. To support his claim that he was an Ethiopian citizen, Mr. Adam submitted a copy of an Ethiopian birth certificate and a Somali-issued identification card. The IJ deemed these documents unreliable.

The BIA explained that the birth certificate included an inaccurate birth date of May 5, 1980, and that both the birth certificate and identification card were issued in 1999, but included a photo of Mr. Adam that was taken after he arrived in the United States in 2008. As the IJ noted in its decision, "[i]t is not possible that the [birth certificate] document could have been issued in the form presented to the Court in 1999 since it bears a photograph which was taken approximately nine years later." Admin. R. at 77. The BIA further explained that, although Mr. Adam did produce a witness to testify about his identity, the witness's knowledge was based on knowing Mr. Adam as a child. The BIA concluded that "[g]iven the limited contact that the witness had with [Mr. Adam] and the numerous inconsistencies in the evidence regarding [Mr. Adam's] identity, the witness's testimony was not adequate to

establish [Mr. Adam's] identity and nationality." *Id*. at 4. The BIA affirmed the IJ's finding that Mr. Adam "did not establish that he is a citizen of Ethiopia and not Kenya as his passport and visa application history indicates." *Id*.

The BIA next addressed inconsistencies in Mr. Adam's testimony regarding an alleged attack by government forces at his home in Ethiopia in April 2005. At the hearing, Mr. Adam testified that during the attack the military accused him of helping the ONLF, but he testified that he had never been a member of that group. In the declaration to his asylum application, however, he stated that he was a member of the ONLF. He further testified at the hearing that he was stabbed in the stomach and hand, but that his wife was not harmed in the attack. In his asylum application, Mr. Adam did not mention that he was stabbed in the hand. And, although he testified at the hearing that his wife was not harmed in the attack, he told the asylum interviewer that his wife had been raped during the attack. The BIA concluded that "[t]hese and other inconsistencies noted by the [IJ] provide ample support for the adverse credibility determination and demonstrate that it is not clearly erroneous." *Id*.

In his opening brief, Mr. Adam challenges the agency's reasons for its adverse credibility determination and offers explanations for some of the inconsistencies noted by the agency. For example, Mr. Adam challenges the IJ's conclusion that his Ethiopian identification documents were unreliable because they appeared to be partially fabricated. At the hearing before the IJ, Mr. Adam offered as an explanation for the alleged inconsistencies in the documents that the government simply made a

mistake when it listed an incorrect birthdate on his birth certificate and identification card and when it indicated that the documents were issued in 1999.

The IJ, however, was not required to credit this explanation. *See Matter of D-R-*, 25 I. & N. Dec. 445, 455 (BIA 2011) ("An [IJ] is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record."). We agree with the BIA that it was a permissible view of the evidence for the IJ to conclude that these documents had been partially fabricated. *See* Admin. R. at 4-5 ("Based on this record, we conclude that the [IJ's] finding not to credit [Mr. Adam's] explanations was not clearly erroneous as it was a permissible view of the evidence.").

Mr. Adam also asserts that the inconsistencies in his testimony about the attack in 2005 resulted from his post-traumatic stress disorder. The BIA "acknowledge[d] the arguments and evidence, including the psychological and medical reports which opine that [Mr. Adam] has post-traumatic stress disorder," but concluded that this did not "explain[] the number and character of inconsistencies in [the] evidence." *Id*. at 5. We see no error in the BIA's determination on this issue.

Finally, Mr. Adam argues that the IJ improperly admitted the asylum interviewer's notes of his interview and that they should have been disclosed to him prior to the hearing. DHS offered the notes as impeachment evidence because they reflected a prior inconsistent statement made by Mr. Adam regarding whether his wife had been harmed during the attack. The BIA determined that the IJ "properly admitted the asylum officer's notes as evidence of [Mr. Adam's] testimony made

- 9 -

during the asylum interview." *Id*. at 3 n.1. It is permissible to admit evidence for impeachment purposes, and the IJ relied on the evidence solely to determine Mr. Adam's credibility and not for any substantive purpose. *See Urooj v. Holder*, 734 F.3d 1075, 1078 (9th Cir. 2013) (describing the scope of impeachment evidence). In addition, impeachment evidence is excepted from pre-hearing disclosure requirements. *See id*. at 1079 n.5. We therefore see no error in the agency's decision to admit the asylum interviewer's notes, even though they had not been disclosed prior to the hearing.

III. Conclusion

The IJ gave specific, cogent reasons for finding that Mr. Adam was not credible. The BIA highlighted several inconsistencies the IJ identified and expressly relied on the IJ's credibility finding. Having carefully reviewed the record in accordance with the prescribed deferential standard of review, we see no basis to conclude that the BIA's decision was substantially unreasonable or that any reasonable adjudicator would be compelled to reach a different conclusion. Mr. Adam would have us reweigh the evidence. That we cannot do.

The petition for review is denied.

Entered for the Court


Bobby R. Baldock
Circuit Judge