ALD-112   UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2561
_____

FABINE FOFANA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A029-815-621)
Immigration Judge:  Mirlande Tadal

_____

Submitted on Respondent's Motion for Summary Action
Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6

March 4, 2021
Before: MCKEE, GREENAWAY, Jr., and BIBAS, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  April 22, 2021)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Kabine Fofana petitions for review of a final order of removal. The Government has filed a motion for summary disposition. We grant the Government's motion and will deny the petition for review.

Fofana is a citizen of Guinea. He entered the United States in 1987. In 1990, he married a United States citizen named Kimberly Greene. Greene filed a Petition for Alien Relative on Fofana's behalf, but the INS determined that the marriage was fraudulent and denied the petition. Fofana then began to use a friend's United States passport to travel internationally for work, going back and forth between the United States and Africa dozens of times, including making more than 20 trips to Guinea. In 2019, Fofana was detained while reentering the United States and charged with being inadmissible for seeking fraudulent admission and for not possessing valid entry documents. See 8 U.S.C. § 1182(a)(6)(C)(i) & (a)(7)(A)(i). Through counsel, Fofana applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

At a hearing before an Immigration Judge (IJ), Fofana conceded removability and testified in support of his applications. He stated that his niece had married the son of former Guinean president Moussa Dadis Camara. Camara was the leader of a military coup who took power in December 2008; in December 2009, Camara was injured in an assassination attempt and left the country. Fofana claims that because of his relationship to Camara, the current leadership of Guinea will persecute or torture him if he is removed to that country.

The IJ denied all relief. The IJ determined that Fofana had not testified credibly, that she would deny asylum as a matter of discretion, and that Fofana had not made the necessary showing that he was likely to be persecuted or tortured. The Board of Immigration Appeals (BIA) affirmed that decision, explaining that Fofana had waived any challenge to the discretionary denial of asylum, that the IJ's credibility finding was not clearly erroneous, and that Fofana had not established that he was eligible for CAT relief. The BIA also rejected Fofana's claim that the IJ had violated his due-process rights.

Fofana filed a petition for review to this Court. After Fofana filed his initial brief, the Government filed a motion for summary disposition. Fofana has filed a response in opposition.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). We will take summary action if "no substantial question is presented" by the petition. 3d Cir. L.A.R. 27.4.

In his opening brief, Fofana argues primarily that the IJ had violated his due-process rights by basing her credibility determination in part on his fraudulent marriage and use of a fraudulent passport, as well as by permitting the Government to introduce certain documents on the day of the hearing. In general, IJs have discretion about whether to admit or exclude evidence. See generally Dedji v. Mukasey, 525 F.3d 187, 191–92 (2d Cir. 2008). "The test for admissibility of evidence is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due

3

process of law." Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003) (quotation marks, alteration omitted); see also 8 U.S.C. § 1229a(b)(4)(B) (stating "the alien shall have a reasonable opportunity to examine the evidence against the alien"). Further, to make out a meritorious due-process claim, Fofana must show substantial prejudice. See Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 213 (3d Cir. 2017). We exercise plenary review over the BIA's denial of this claim. See id.

We agree with the Government that Fofana's due-process rights were not violated. First, as noted above, Fofana used a fraudulent passport dozens of times to travel on business, going so far as to twice renew his friend's passport with his own photograph. Fofana argues that his "use of the passport is . . . not the subject of the matter at hand," Br. at 23, and contends that the IJ's consideration of this conduct establishes that the IJ was biased against him. We disagree; to the contrary, "the IJ was entitled to draw an inference of untrustworthiness from this serial use of fraudulent documentation." Mariko v. Holder, 632 F.3d 1, 6 (1st Cir. 2011); see also Singh v. Holder, 638 F.3d 1264, 1272 (9th Cir. 2011) ("[L]ies and fraudulent documents when they are no longer necessary for the immediate escape from persecution do support an adverse inference.").

Fofana also objects to the IJ's reliance on the INS's records concerning the denial of the Petition for Alien Relative; these documents state that Kimberly Greene admitted that she had been paid to marry Fofana and that the two had never lived together or consummated the marriage. In general, we agree with the BIA that this type of prior conduct may be considered in assessing an alien's credibility. See generally Sunuwar v.

4

Att'y Gen., --- F.3d ---, No. 20-2091, 2021 WL 728417, at *7 (3d Cir. Feb. 25, 2021) (explaining that Ijs have "wide latitude in considering all pertinent factors and weighing those factors as they deem appropriate in each individual case" (quotation marks, alterations omitted)); Singh v. Holder, 643 F.3d 1178, 1181 (9th Cir. 2011) ("An asylum applicant who lies to immigration authorities casts doubt on his credibility and the rest of his story."). Fofana argues that this information should have been excluded because the Government did not disclose it until the day of the hearing. However, because the Government used the records concerning Fofana's fraudulent marriage solely for impeachment purposes, the Government probably was not required to submit this evidence in advance. See Urooj v. Holder, 734 F.3d 1075, 1079 n.5 (9th Cir. 2013); Tamenut v. Ashcroft, 361 F.3d 1060, 1061 (8th Cir. 2004).

Further, even assuming that it should have produced this evidence earlier, Fofana has not established that he was prejudiced. First, any potential prejudice was diminished because Fofana already was aware of Greene's statement. See A.R. at 162. Moreover, on appeal to the BIA, in an apparent effort to show that, had he had notice of the Government's intent to use this evidence, he could have mounted a stronger defense, he submitted a 2020 BIA decision affirming the denial of a new Petition for Alien Relative filed on his behalf. The BIA in that case noted that Fofana and Greene had submitted affidavits challenging Greene's 1991 sworn statement that the marriage had been fraudulent, but concluded that these affidavits did not justify reconsidering the prior decision because "there is little corroboration in the record to support their recent account

5

or to demonstrate that the beneficiary had an intent to enter into his prior marriage for bona fides purposes." A.R. at 42. The BIA in this case concluded that this "rebuttal" evidence would not have changed the IJ's decision, both because this new evidence is not particularly compelling and because the adverse credibility finding was based on several other factors. A.R. at 7. We agree on both fronts, and conclude that Fofana was therefore not prejudiced.

Finally, Fofana argues that the IJ violated his due-process rights by permitting the Government to introduce the I-213 Record of Deportable/Inadmissible Alien despite not producing it before the hearing. However, the I-213 Record of Deportable/Inadmissible Alien "is a presumptively reliable and admissible document." Antia-Perea v. Holder, 768 F.3d 647, 657 (7th Cir. 2014). Fofana has not even attempted to show how the admission of this document prejudiced him, and no prejudice is evident to us.

Fofana also challenges the agency's denial of withholding of removal[1] on the ground that he failed to testify credibly. In cases like this one, where "our Court is called

---

[1] The BIA did not abuse its discretion in concluding that Fofana had waived any challenge to the denial of asylum on discretionary grounds because he did not raise such a claim in his notice of appeal or brief. See Uddin v. Att'y Gen., 870 F.3d 282, 288–89 (3d Cir. 2017). For the same reason, Fofana did not exhaust this claim, and we therefore lack jurisdiction to review that dispositive decision. See 8 U.S.C. § 1252(d)(1); Zheng v. Gonzales, 422 F.3d 98,107–08 (3d Cir. 2005). Further, Fofana has not challenged, and apparently does not wish to challenge, the agency's denial of CAT relief. See 3d Cir. ECF No. 23 at 6 (Fofana's response to Government's motion for summary action, acknowledging that he had not discussed CAT claim in opening brief and stating that his arguments "are centered on his application for withholding of removal"). In any event, we discern no error in the agency's CAT ruling.

to evaluate an IJ's credibility determination that has been adopted by the BIA, we do so with exceptional deference." Alimbaev v. Att'y Gen., 872 F.3d 188, 196 (3d Cir. 2017); see also Sunuwar, 2021 WL 728417, at *7 (explaining that "only the most extraordinary circumstances justify overturning an adverse credibility determination" (quotation marks, alteration omitted)); 8 U.S.C. § 1252(b)(4)(B) (stating that the Court must uphold the agency's credibility determination "unless any reasonable adjudicator would be compelled to conclude to the contrary").

Here, the agency did not err in disbelieving Fofana's account. For one thing, in his affidavit in support of his asylum application, he claimed that he had been able to safely travel to Guinea because his trip had been short and he had used an assumed name, see A.R. at 404; however, when he testified, he said he was safe because he was "always under protection of Mr. Balde[2] who happens to be military" and who helped him enter the country surreptitiously, see A.R. at 143. Since Balde's role in this story was so central—Fofana testified that without Balde, "I would not have been able to go to Guinea," id.—it was reasonable for the BIA to have expected him to have mentioned him in his statement. See Sunuwar, 2021 WL 728417, at *8 & n.8; Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004); Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). Further, when asked about why Balde had not testified by phone, Fofana first said Balde would not "want to be on the telephone discussing matters like this," A.R. at 171, but

---

[2] In the hearing transcript, the name is spelled "Baldi," but in the supporting documents, his name is spelled "Balde." We use the latter spelling.

later said Balde "would do it [testify] with absolutely no doubt in my mind," A.R. at 186. The adverse-credibility determination is further supported by Fofana's repeated use of a fraudulent passport to travel for business. See Mariko, 632 F.3d at 6. Thus, the BIA's credibility determination was reasonable. See § 1252(b)(4)(B).

Accordingly, we grant the Government's motion and will summarily deny the petition for review.