**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3895
_____

BELICE CARMIL,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A044-602-433)
Immigration Judge:  Honorable Alan J. Vomacka
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 3, 2017

Before: GREENAWAY, JR., **VANASKIE**[*] and ROTH, Circuit Judges

(Opinion filed July 5, 2017)
_____

OPINION[**]
_____

PER CURIAM

_____

[*]  Judge Vanaskie has replaced Judge Greenberg on the panel.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The Board of Immigration Appeals ("BIA") issued a final order directing that Berlice* Carmil, a native and citizen of Haiti, be removed from the United States. Carmil has asked that we review the BIA's order.

I.

Carmil was admitted to the United States in 1995 as a lawful permanent resident. He was ten years old at that time. A decade later, Carmil was convicted in a New Jersey court of second-degree robbery and sentenced to eight years of imprisonment.

In 2014, the Department of Homeland Security issued a Notice to Appear, which set forth the legal basis for removing Carmil from the United States. Specifically, the Notice to Appear charged Carmil with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), insofar as his robbery conviction qualified as an "aggravated felony" both as a "theft offense" under 8 U.S.C. § 1101(a)(43)(G), and as a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). Carmil, through counsel, conceded that he was removable as charged.

The Immigration Judge ("IJ") determined that Carmil's robbery conviction and related sentence rendered him ineligible for most forms of relief. The IJ thus considered on the merits only Carmil's application for deferral of removal under Article 3 of the United Nations Convention Against Torture ("CAT").

The IJ acknowledged two types of CAT claims raised by Carmil. One rested on Carmil's apparent fear that he will be indefinitely detained and tortured in a Haitian prison because of his status as a criminal deportee. The other claim rested on Carmil's

---

* In the caption, the petitioner's name is incorrectly spelled "Belice."

fear that he will be tortured at the hands of political enemies of his father, a former

member of the Tonton Macoutes.[†] The IJ primarily found, as to both claims, that it was

unlikely Carmil would encounter conduct of the sort that could be classified as torture

inflicted by, or with the acquiescence of, the Haitian government.[‡] The BIA agreed and

affirmed. Carmil then filed this petition for review.

## II.

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a).

But that general grant of jurisdiction is circumscribed in cases involving criminal aliens,

like Carmil, deemed removable under § 1227(a)(2). In such cases we may entertain only

constitutional claims and questions of law; factual or discretionary determinations are

off-limits. See 8 U.S.C. §§ 1252(a)(2)(C)-(D).

## III.

---

[†] In the 1970s and early 1980s, the Tonton Macoutes acted as the ultraviolent personal police force of Haitian dictator Jean-Claude "Baby Doc" Duvalier (and his father). Saint Fort v. Ashcroft, 329 F.3d 191, 193 n.1 (1st Cir. 2003). Duvalier was ousted in 1986. A few years later, Jean-Bertrand Aristide became Haiti's first democratically elected head of state. Romilus v. Ashcroft, 385 F.3d 1, 4 n.3 (1st Cir. 2004). Aristide created a political party known as "Lavalas." Brezilien v. Holder, 569 F.3d 403, 407 n.1 (9th Cir. 2009). Carmil testified below that the enemies of his father are Lavalas supporters.

[‡] The IJ also found that the lack of corroboratory evidence to support Carmil's claim

A liberal reading of Carmil's pro se brief reveals several claims of error.[§]  Because these claims are either unreviewable or without merit, we will deny the petition for review.

Carmil first claims that the agency erred in denying the CAT claim related to his prospective status in Haiti as a criminal deportee.  Carmil argues that he presented sufficient evidence showing that he is likely to be detained indefinitely and subjected to conditions so horrific as to amount to torture.  Neither the BIA nor the IJ appears to have doubted that Carmil was likely to be detained upon his removal—the IJ credited Carmil's testimony that "his two brothers were detained when they returned to Haiti," but found it significant that they were released—or that prison conditions in Haiti are deplorable.  Rather, this claim was rejected primarily because Carmil failed to produce evidence sufficient to demonstrate the likelihood of any act or conduct that would meet the legal definition of "torture."  Cf. 8 C.F.R. § 208.18(a)(1) ("torture" under CAT requires that alien's "pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."); Pierre v.

related to his father's political affiliation "is a serious weakness in the case."

[§] Carmil notes in his opening brief that he is without a copy of the Administrative Record.  Apparently, Carmil was separated from his "legal materials" when he was transferred from ICE custody at Essex County Correctional Facility to state custody at Atlantic County Jail (to face new criminal charges).  The case docket indicates, however, that to address Carmil's concern:  (1) the Government mailed a copy of the Administrative Record to Carmil at Atlantic County Jail; and (2) our Clerk granted Carmil an extension of time to file his opening brief.  Carmil has given no indication that those efforts were unavailing or that he has been prejudiced in any way.

Att'y Gen., 528 F.3d 180, 189 (3d Cir. 2008) (en banc) ("the CAT requires a showing of specific intent").

Whether public officials in Haiti are likely to engage in certain conduct, which may or may not constitute consent to or acquiesce in torture, is a question of fact. See Dutton-Myrie v. Att'y Gen., 855 F.3d 509, 516-17 (3d Cir. 2017); cf. Roye v. Att'y Gen., 693 F.3d 333, 343 n.12 (3d Cir. 2012). We lack jurisdiction to review such factual determinations by the agency. See Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 309 (3d Cir. 2011). While we do have jurisdiction to determine whether the facts of this case meet "the legal definition of torture" (including whether Haitian officials are "willfully blind" to torturous acts), see Dutton-Myrie, 855 F.3d at 516-17, we conclude on this record that the BIA did not err as a matter of law in rejecting Carmil's claim. See Pierre, 528 F.3d at 189.

For the reasons just noted, we also lack jurisdiction to review the factual aspects of the agency's rejection of Carmil's CAT claim related to his father's political affiliation. The IJ made findings of fact that Carmil "never had any active role in the politics of Haiti," that Carmil's "somewhat unusual" last name would not necessarily lead to persons in Haiti associating Carmil with his father, and that the "there have been some peaceful elections in Haiti in the last ten years" and "the situation has improved, even if only marginally, for [Carmil]." In addition, the BIA agreed both with the IJ's observation that Carmil's "concern is based on memories of when his family was threatened during his childhood," and his finding that Carmil presented "insufficient

evidence" of acts or conduct that would satisfy the specific-intent component of a CAT claim. These determinations are factual in nature and, insofar as Carmil challenges them, they fall outside the permissible scope of our review. Moreover, without sufficient supporting evidence, we cannot conclude as a matter of law that Carmil is likely to be harmed by his father's old political enemies or that such harm would be inflicted, or acquiesced in, by the Haitian government.

Carmil's next claim on appeal is that removal will violate his substantive due process rights, per the "state-created danger" doctrine. This claim is foreclosed by our precedent. See Rranci v. Att'y Gen., 540 F.3d 165, 171 (3d Cir. 2008); Kamara v. Att'y Gen., 420 F.3d 202, 217 (3d Cir. 2005).

Carmil also claims that the agency erred when it declined to aggregate the likelihood that he will be tortured in a Haitian prison with the likelihood that he will be tortured by his father's old political rivals. The BIA had observed that aggregating the probabilities of two unlikely events—as Carmil was attempting to do—does not necessarily increase the likelihood of either. This claim, while arguably presenting a question of law, see, e.g., Quijada-Aguilar v. Lynch, 799 F.3d 1303, 1308 (9th Cir. 2015), does nothing to undercut the agency's rejection of Carmil's two CAT claims. Thus, even assuming, arguendo, that the BIA's failure to aggregate was error, the error was harmless. Cf. Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (holding that harmless error doctrine applies "when it is highly probable that the error did not affect the outcome of the case").

Carmil's final claim is that he was denied his Fifth Amendment right to a fair removal hearing because the Government "did engage in intentional self-contradictory acts as a means of obtaining an unfair advantage." Carmil does not support that conclusory jumble with any details, and we discern no support from the record that these removal proceedings were conducted in such a way as to raise constitutional concerns. See Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007).

III.

For the reasons outlined above, we will deny Carmil's petition for review.[**]

---

[**] As we will deny Carmil's petition for review, his multiple renewed requests that the Court grant him a stay of removal are denied. We also note that included with Carmil's opening brief is a "memorandum of law in support of bond appeal." No viable basis for relief is presented in that memorandum. In particular, Carmil's claims related to the denial of his request for a bond redetermination are moot because he did receive a bond redetermination pursuant to an order of the U.S. District Court for the District of New Jersey. See Carmil v. Tsoukaris, DC Civ. No. 16-2335, 2016 WL 7177606, at *2 (D.N.J. Dec. 8, 2016). In addition, we note that Carmil does not appear to have appealed to this Court the District Court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241, which, inter alia, challenged his continued detention as a violation of the Due Process Clause.