**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE EDUARDO GUERRA, *Petitioner,* | No. 18-71070 |
| | Agency No. A206-351-878 |
| v. | |
| WILLIAM P. BARR, Attorney General, *Respondent.* | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 17, 2019
San Francisco, California

Filed March 3, 2020
Amended September 11, 2020

Before: Michael R. Murphy,* Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Order;
Opinion by Judge Paez

---

\* The Honorable Michael R. Murphy, United States Circuit Judge
for the U.S. Court of Appeals for the Tenth Circuit, sitting by
designation.

## SUMMARY**

### Immigration

The panel filed (1) an order amending its opinion and granting the government's motion for clarification; and 2) an amended opinion. In the amended opinion, the panel granted a petition for review of the Board of Immigration Appeals' reversal of an immigration judge's grant of deferral of removal under the Convention Against Torture, and remanded, holding that the Board erred by conducting a de novo review of the IJ's factual findings, rather than reviewing them for clear error, as required by 8 C.F.R. § 1003.1(d)(3)(i).

Petitioner, who suffers from a mental health condition, argued that because he had no support system in Mexico, he would likely become homeless and end up in the hands of either Mexican law enforcement, or a Mexican mental health institution, where he would more likely than not be tortured. The IJ concluded that petitioner established a clear probability of torture and granted CAT relief, but the Board reversed.

The panel held that the Board erred by reviewing the IJ's factual findings de novo, rather than for clear error, as required by 8 C.F.R. § 1003.1(d)(3)(i). Specifically, the panel concluded that in reversing the IJ's conclusion that petitioner had established that Mexican officials would have the specific intent to torture him, the Board erred by failing

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to address the IJ's key factual findings on which she based her conclusion, and by according more weight to country conditions evidence which the IJ had considered and found unpersuasive. The panel rejected the government's argument, relying on *Villegas v. Mukasey*, 523 F.3d 984 (9th Cir. 2008), that evidence of primitive and abusive practices on mental health patients categorically is insufficient to support an inference of specific intent to inflict harm. The panel also held that in providing an alternative reason why harmful practices persist in Mexico mental health institutions despite international condemnation, the Board appeared to engage in impermissible factfinding in concluding that lack of material resources and other bureaucratic concerns provide plausible explanations for the persistence of problems. Because the Board did not explain why the IJ's findings were illogical, implausible, or not supported by permissible inferences from the record, the panel held that it had no trouble concluding that the Board failed to apply clear error review to the IJ's finding of specific intent.

Similarly, the panel held that the Board failed to engage in clear error review in reversing the IJ's finding that petitioner established a clear probability that he would be subjected to severe pain or suffering in criminal detention. The panel concluded that the Board erred by failing to address the IJ's predicate factual findings, based on petitioner's specific circumstances, that led to the IJ's conclusions. The panel explained that while the Board may disagree with the inferences the IJ drew, it cannot disregard the IJ's findings and substitute its own view of the facts. Rather, it must either find clear error, explaining why; or, if critical facts are missing, remand to the IJ.

Lastly, the panel held that the Board's analysis of the likelihood of harm was also flawed because it analyzed the likelihood of harm by Mexican police and officials in mental health institutions separately, rather than considering "the aggregate risk" that petitioner faces if removed.

The panel rejected petitioner's request for a remand with instructions to grant CAT relief, and instead remanded for the Board to reconsider its decision applying the correct standards.

## COUNSEL

Teresa A. Reed Dippo (argued), Munger Tolles & Olson LLP, San Francisco, California; Keren Zwick, National Immigrant Justice Center, Chicago, Illinois; Elaine J. Goldenberg, Munger Tolles & Olson LLP, Washington, D.C.; Alison Pennington, Centro Legal de la Raza, Oakland, California; for Petitioner.

Linda Y. Cheng (argued) and Madeline Henley, Trial Attorneys; Greg D. Mack, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**ORDER**

The opinion, filed on March 3, 2020, reported at 951 F.3d 1128, is amended as follows:

On page 8 of the slip opinion, replace <. . . the IJ's determination that it is more likely than not that Guerra faces a clear probability of being tortured in criminal detention.> with <. . . the IJ's determination that it is more likely than not that Guerra faces a clear probability of enduring severe pain or suffering in criminal detention.>.

On page 10 of the slip opinion, replace <Whether government officials act with specific intent to torture . . . .> with <Whether government officials act with specific intent to inflict severe pain or suffering . . . .>.

On page 14 of the slip opinion, replace <In Guerra's case, the IJ made a factual finding on the basis of record evidence that there is specific intent to torture, so *Villegas* has limited application.> with <In Guerra's case, the IJ made a factual finding on the basis of record evidence that there is specific intent to inflict severe pain or suffering, so *Villegas* has limited application.>.

On page 15 of the slip opinion, replace <We next turn to the IJ's finding that Guerra is likely to be tortured in criminal detention in Mexico.> with <We next turn to the IJ's finding that Guerra is likely to endure severe pain or suffering in Mexico.>.

On page 15 of the slip opinion, replace <In other words, although the BIA acknowledged there was a *possibility* that Guerra would be subjected to harm amounting to torture as a detainee, it concluded that the general possibility of torture does not meet the burden of establishing that Guerra

individually will be targeted for torture.> with <In other words, although the BIA acknowledged there was a *possibility* that Guerra would be subjected to harm amounting to torture as a detainee, it concluded that the general possibility of enduring such harm does not meet the burden of establishing that Guerra individually will be targeted for such harm.>.

On page 16 of the slip opinion, replace <. . . the IJ inferred that Guerra would come into their custody and be tortured as others have been in criminal detention.> with <. . . the IJ inferred that Guerra would come into their custody and endure severe pain or suffering as others have in criminal detention.>.

On page 16 of the slip opinion, replace <. . . evidence demonstrating that the mentally ill or intellectually disabled are specifically targeted for torture . . . .> with <. . . evidence demonstrating that the mentally ill or intellectually disabled are specifically targeted for the infliction of severe pain or suffering . . . .>.

With these changes, the government's motion for clarification (Dkt. 63) is **GRANTED**. An amended opinion is attached and filed concurrently.

---

## OPINION

PAEZ, Circuit Judge:

Jose Eduardo Guerra ("Guerra"), a citizen and national of Mexico, petitions for review of an adverse decision by the Board of Immigration Appeals ("BIA"). At issue is Guerra's application for deferral of removal under the Convention

Against Torture ("CAT"). An Immigration Judge ("IJ") granted Guerra's application for deferral of removal under CAT, but the BIA reversed. Because the BIA did not properly review the IJ's factual findings for clear error, as required by 8 C.F.R. § 1003.1(d)(3)(i), we grant the petition and remand for further proceedings.

## I.

Guerra entered the United States without inspection when he was eleven years old to escape severe child abuse, neglect, and sexual abuse. After joining his father and stepfamily in the United States, Guerra was placed in special education classes, was diagnosed with a seizure disorder, and started taking anti-seizure medication. Following high school, and because he could not live on his own, Guerra was placed in a private, single-family dwelling for mentally disabled individuals in Bakersfield, California. In late June 2013, he was arrested for engaging in lewd and lascivious acts with a boy in the home.

Guerra was found incompetent to stand trial and was referred to a program for evaluation, psychiatric treatment, and restoration of competence. In August 2014, he was diagnosed with psychosis and began taking antipsychotic medication while he underwent treatment to gain trial competency. He was deemed competent to stand trial in September 2015, shortly after which he pleaded guilty to one count of violating California Penal Code § 288(a). The trial court sentenced him to three years' imprisonment. While serving his sentence, Guerra started to exhibit "bizarre/disruptive behavior" and to experience auditory hallucinations. He was taken into immigration custody following his incarceration at Wasco State Prison, where he was served with an immigration warrant and a notice to appear.

The Department of Homeland Security ("DHS") charged Guerra with removability under 8 U.S.C. § 1182(a)(6)(A)(i) (presence in the United States without admission or parole) and 8 U.S.C. § 1182(a)(2)(A)(i)(I) (conviction of a crime involving moral turpitude).  At his first immigration court hearing in June 2016, the IJ found, based on a preponderance of evidence, that Guerra was incompetent to represent himself and ordered appointment of a representative.[1]

Guerra, through appointed counsel, applied for deferral of removal under CAT.  He argued that because he had no support system in Mexico, he would likely become homeless and end up in the hands of either Mexican law enforcement, or a Mexican mental health institution.  Under either scenario, Guerra argued, it was more likely than not that he would be tortured.  In support of his application, Guerra submitted a psychological evaluation and mental health records; Mexican court records; letters from his family describing his past abuse, lack of support in Mexico, and his inability to work or care for himself; and multiple country condition reports and news articles about widespread abuse of individuals with mental illnesses in Mexican jails and mental health facilities.  Because Guerra had competency issues and was seeking only deferral of removal under CAT,

---

[1] While in immigration custody, Guerra was informed of his membership in the class certified in *Franco-Gonzalez v. Napolitano*, No. 10-cv-2211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011).  Because a qualified mental health provider determined that Guerra had a serious mental disorder as defined in *Franco-Gonzalez*—in his case, schizophrenia, developmental delay, and intellectual disorder dementia—Guerra was entitled to a competency hearing and the possibility of appointed counsel, *see Franco-Gonzalez v. Holder*, 2014 WL 5475097, at *8 (C.D. Cal. Oct. 29, 2014).

the IJ granted Guerra's motion for safeguards and waived his testimony.

In August 2017, the IJ issued her decision granting Guerra deferral of removal under CAT. The IJ concluded that CAT protection was warranted because of Guerra's specific circumstances, which made it more likely than not that he would be harmed by police or government officials working in psychiatric institutions in Mexico. She also relied on the documented conditions in Mexico regarding the discrimination against people with disabilities and treatment of those in criminal custody and psychiatric institutions that qualifies as torture. The IJ also concluded that Guerra could not safely and reasonably relocate to avoid torture by police or government officials due to the widespread nature of the violence.

DHS appealed the IJ's grant of CAT deferral, which the BIA sustained. The BIA disagreed with the IJ's determination that Guerra would be subject to torture in either criminal detention or mental health institutions in Mexico. Guerra timely petitioned for review of the BIA's vacatur of CAT deferral.

## II.

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1) and to review CAT claims that were denied on the merits. *See Pechenkov v. Holder*, 705 F.3d 444, 448 (9th Cir. 2012).

"Where the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012) (quotations omitted).

We review factual findings for substantial evidence and legal questions de novo. *Ridore v. Holder*, 696 F.3d 907, 911 (9th Cir. 2012). "Whether the BIA has applied the correct standard of review is a question of law." *Id.*

## III.

Guerra challenges the BIA's decision on two grounds, both of which raise essentially the same issue—whether the BIA applied the correct standard when reviewing the IJ's factual findings related to Guerra's CAT deferral application. "The governing regulations explicitly state that the BIA shall not 'engage in *de novo* review of findings of fact determined by an immigration judge.'" *Id.* (quoting 8 C.F.R. § 1003.1(d)(3)(i)). Instead, "[f]acts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). "Where the BIA engages in de novo review of an IJ's factual findings instead of limiting its review to clear error, it has committed an error of law." *Ridore*, 696 F.3d at 911 (quoting *Rodriguez*, 683 F.3d at 1170). "Further, the BIA may 'not engage in factfinding in the course of deciding appeals.'" *Id.* (quoting 8 C.F.R. § 1003.1(d)(3)(iv)).

Guerra argues that the BIA failed to apply clear error review in two ways: when rejecting the IJ's determination that Mexican health care workers act with specific intent to harm mental health patients, and when rejecting the IJ's determination that it is more likely than not that Guerra faces a clear probability of enduring severe pain or suffering in criminal detention. We agree with him on both grounds. Moreover, we distinguish Guerra's situation from that in *Villegas v. Mukasey*, 523 F.3d 984 (9th Cir. 2008), for the reasons discussed below.

## A.

The essence of Guerra's CAT application is that he faces a more than fifty percent chance of being tortured if removed to Mexico because of his particular circumstances and the treatment of similarly situated individuals in that country. *See* 8 C.F.R. § 208.16(c)(2). In considering a CAT application, the IJ and BIA must consider "all evidence relevant to the possibility of future torture," *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) (quoting 8 C.F.R. § 1208.16(c)(3)), and must "consider the *aggregate* risk that [the applicant] would face," *id.* at 775.

The implementing regulations define torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her . . . or for any reason based on discrimination of any kind . . . [by] or with the consent or acquiescence of a public official . . . ." 8 C.F.R. § 208.18(a)(1). "Government acquiescence does not require actual knowledge or willful acceptance of torture; awareness and willful blindness will suffice." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705–06 (9th Cir. 2010). A petitioner must show, however, that "severe pain or suffering was specifically intended—that is, that the actor intend the actual consequences of his conduct, as distinguished from the act that causes these consequences." *Villegas*, 523 F.3d at 989.

As we have noted, the regulations "preclude [the BIA] from reviewing an IJ's factual findings de novo." *Zumel v. Lynch*, 803 F.3d 463, 475 (9th Cir. 2015). Under this scheme, the BIA may only review the IJ's factual findings to determine whether they are clearly erroneous. *Id.* Clear error review means that "the BIA may not make its own findings or rely 'on its own interpretation of the facts.'" *Id.* (citation omitted). Instead, the BIA may find an IJ's factual

finding to be clearly erroneous only "if it is 'illogical or implausible,' or without 'support in inferences that may be drawn from the facts in the record.'" *Rodriguez*, 683 F.3d at 1170 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985)).**[2]** Importantly, the BIA may not reverse an IJ's finding "simply because it is convinced that it would have decided the case differently." *Id.* at 1171 (quoting *Anderson*, 470 U.S. at 573). "Where there are two permissible views of the evidence, the [IJ]'s choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

The government defends the BIA's decision in this case, pointing out how the BIA stated it found clear error no fewer than four times in the course of reviewing the IJ's factual findings. We reemphasize that "[w]e do not rely on the [BIA]'s invocation of the clear error standard; rather, when the issue is raised, our task is to determine whether the BIA faithfully employed the clear error standard or engaged in improper de novo review of the IJ's factual findings." *Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013) (quoting *Rodriguez*, 683 F.3d at 1170) (alteration in *Vitug*).

## B.

First, we consider the BIA's rejection of the IJ's finding of specific intent to torture by Mexican officials in mental health institutions. Whether government officials act with specific intent to inflict severe pain or suffering is a question of fact that is subject to clear error review. *See Ridore*, 696 F.3d at 916–17.

---

**[2]** The Supreme Court's decision in *Anderson* has guided our understanding of the clear error standard. *See Rodriguez*, 683 F.3d at 1171; *see also United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

The IJ found that government officials would intentionally inflict harm on Guerra for a proscribed purpose. In reaching that conclusion, the IJ made predicate factual findings, based on extensive record evidence documenting that: (1) individuals like Guerra face widespread systemic discrimination on the basis of their disabilities; (2) the Mexican government does not enforce laws that prohibit discrimination against those with disabilities in employment, education, and in the provision of services; (3) the Mexican criminal justice system frequently denies persons with mental disabilities the right to make their own legal decisions and frequently subjects them to arbitrary detention during legal proceedings; (4) individuals with disabilities are provided health care services only within institutions, where they are segregated from the rest of the community and have no right to make basic daily decisions; and (5) employees of mental health institutions carry out actions—including the use of permanent physical restraints, physical and sexual abuse, and heavy sedation to control the patients' behavior—that qualify as torture under CAT and sometimes cause death.[3]

The BIA assumed without deciding that Guerra faces a likelihood of being institutionalized in a Mexican mental health institution. But it rejected the IJ's finding of specific

---

[3] As the IJ noted, Guerra submitted extensive documentation of country conditions in Mexico. The IJ relied particularly on: the State Department's Mexico 2016 Human Rights Report; a 2013 report from the United Nations Special Rapporteur on Torture that focused on practices in health care settings; reports from an advocacy group, Disability Rights International ("DRI"), documenting their findings in Mexico; a *New York Times* article about DRI's 2010 report; news articles about difficulties faced by deportees, homeless individuals, and those with mental illness in Mexico; and reports from Amnesty International, Human Rights Watch, and other sources regarding torture in Mexico.

intent, noting "there is insufficient record evidence from which it is reasonable to conclude that health care workers implement such [primitive and abusive] practices for the specific purpose of inflicting harm on the patients." Instead, the BIA accorded more weight to country reports in the record that the extreme measures were taken as a misguided effort to prevent patients from harming themselves or others. Citing *Villegas*, 523 F.3d at 989, and *Chavarin v. Sessions*, 690 F. App'x 924, 926 (9th Cir. 2017), the BIA also rejected Guerra's argument that specific intent could be inferred from the fact that these practices continue to persist despite years of condemnation from the international community, attributing the persistence of these problems to "the difficulties inherent in addressing a complex public policy issue with insufficient material resources." This was not clear error review for multiple reasons.

First, "a 'conclusory pronouncement' that the IJ has erred is insufficient[] . . . ." *Zumel*, 803 F.3d at 475 (quoting *Vitug*, 723 F.3d at 1063). The BIA failed to "address whether the IJ clearly erred in making the key factual findings on which she based her conclusion regarding [Mexican government officials'] intent," *id.* at 476, such as the continued patterns of discrimination against individuals with disabilities, or the segregation of those individuals from the general community. In fact, the BIA did not even acknowledge these findings. "The BIA's failure to evaluate the 'factual findings of the IJ that were key to the IJ's holding,' indicates the BIA was not reviewing the IJ's determination for clear error." *Id.* (quoting *Vitug*, 723 F.3d at 1064).

The government defends the BIA's rejection of the finding of specific intent by Mexican officials to punish patients by arguing that it lacked adequate record support.

This is plainly belied by the IJ's decision and the record. The IJ cited various reports from the international advocacy group, DRI, which describe the practices in the mental health facilities as punishment and torture, and incorporate findings by the United Nations Special Rapporteur on Torture that treatment such as the use of prolonged restraints and forced medication may constitute torture.[4]

Second, the clear error standard does not allow the BIA to reweigh the evidence when the IJ's account of the evidence is plausible. *See Rodriguez*, 683 F.3d at 1171 (discussing *Anderson*, 470 U.S. at 573–74). The IJ acknowledged and *rejected* the alternative explanation that mental health officials' actions can be explained by gross negligence and a misunderstanding of the nature of psychiatric illness. On appeal, the BIA stated that it "accord[ed] more weight to country reports in the record that [the IJ] did not find persuasive." But the BIA cannot reverse the IJ's factual finding "even though [it is] convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 574.

The government appears to argue that evidence of primitive and abusive practices on mental health patients categorically is insufficient to support an inference of specific intent to inflict harm, relying heavily on our decision in *Villegas*. This overstates our prior holding. In *Villegas*, the IJ *denied* CAT relief because he found that the petitioner showed no evidence of specific intent to torture, and the BIA affirmed that denial. 523 F.3d at 986–87. We agreed with

---

[4] As an example, one DRI report found that "beatings were a common form of punishment used by administrators" at a facility, and "individuals who managed to escape were tracked down and forcibly returned to the institution where they suffered further punishment."

the IJ that a petitioner must show specific intent for purposes of CAT relief.  *Id.* at 989.  We were not compelled to reverse the underlying factual findings because we found nothing in the record that indicated specific intent where there was also evidence of the Mexican government's desire to improve conditions.  *Id.* at 987–89.  In Guerra's case, the IJ made a factual finding on the basis of record evidence that there is specific intent to inflict severe pain or suffering, so *Villegas* has limited application.**[5]**  Critically, the IJ found that Guerra submitted sufficient evidence to show that he would be harmed for a proscribed purpose and explicitly distinguished this case from *Villegas*.

Third, in providing an alternative reason why these practices persist in Mexico despite international condemnation, the BIA appears to engage in impermissible factfinding.  *See Brezilien v. Holder*, 569 F.3d 403, 413 (9th Cir. 2009) ("[T]he BIA may not engage in factfinding to resolve an appeal . . . .").  While lack of material resources and other bureaucratic concerns provide plausible explanations for the persistence of problems in Mexican mental health institutions, the IJ did not make such a finding.  Critically, the BIA did not explain why the IJ's findings were illogical, implausible, or not supported by permissible inferences from the record.  *See Rodriguez*, 683 F.3d at 1170.  Thus, we have no trouble concluding that the BIA failed to apply clear error review to the IJ's finding of specific intent.

---

**[5]** For similar reasons, the government's reliance on *Chavarin*, a non-precedential memorandum, is also unpersuasive because the IJ in that case denied CAT deferral and our holding was simply that substantial evidence supported the IJ's finding of no specific intent.  *See* 690 F. App'x at 926.  *Villegas* and *Chavarin* do not support the BIA's decision in this case, where the IJ made different findings on the unique record before her.

## C.

We next turn to the IJ's finding that Guerra is likely to endure severe pain or suffering in Mexico. What is likely to happen to a petitioner if deported to a certain country is also a question of fact that the BIA may reject only for clear error. *See Ridore*, 696 F.3d at 915, 918–19.

In reaching her conclusion, the IJ made predicate factual findings including: (1) Guerra's "abnormal behavior" will attract the attention of Mexican police; (2) Guerra will be homeless because his family cannot support him from the United States; (3) police target for arrest those who are homeless and have mental health conditions; and (4) Mexican police nationwide torture those whom they arrest and detain. In addition to citing the country conditions described above, *see supra* at 13 n.3, the IJ also relied on family letters and the psychological evaluation in the record.

The BIA assumed without deciding that Guerra will face criminal detention but disagreed with the IJ's finding that he will face a clear probability of being tortured as a result. It acknowledged record evidence of harsh conditions in Mexican prisons but stated that it "d[id] not find that a dysfunctional prison system in itself equates to or requires a grant of protection under [CAT] to detainees generally who are in the system." In other words, although the BIA acknowledged there was a *possibility* that Guerra would be subjected to harm amounting to torture as a detainee, it concluded that the general possibility of enduring such harm does not meet the burden of establishing that Guerra individually will be targeted for such harm. Again, we hold this does not satisfy clear error review.

First, the BIA's reasoning "misapprehends and thus misstates the totality of the IJ's findings and conclusions."

*Ridore*, 696 F.3d at 918.  Just as in *Ridore*, "[t]he IJ did not find that [Guerra] was likely to be tortured just because there were 'acts of torture in [Mexico]'s prisons.'"  *Id.*  In other words, the IJ did not simply infer from a finding that torture occurs generally in Mexico to a finding that Guerra will likely be tortured.  Rather, the IJ inferred that Guerra's specific circumstances—namely, his diagnoses for schizophrenia and seizure disorder—make him likely to attract attention of the police.  The IJ also relied on extensive letters from Guerra's family and a psychological evaluation to find that he would become homeless because he cannot care for himself.  Against the backdrop of country condition evidence about Mexican police targeting those who are homeless and have mental health conditions, the IJ inferred that Guerra would come into their custody and endure severe pain or suffering as others have in criminal detention.  While the BIA may disagree with the inferences that the IJ drew, it failed to address the IJ's predicate factual findings and simply asserted that Guerra did not meet his burden.  *See Ridore*, 696 F.3d at 919.  "[T]he BIA cannot disregard the IJ's findings and substitute its own view of the facts.  Either it must find clear error, explaining why; or, if critical facts are missing, it may remand to the IJ."  *Id.*

Additionally, it is evident that "the BIA failed to grapple with the evidentiary record," *id.*, which includes various articles about the vulnerability of certain populations to which Guerra belongs, such as three reports discussing how people with mental illnesses are discriminated against and are at greater risk of abuse in the criminal justice system.  While the government correctly points out that the IJ did not cite any individualized country conditions evidence demonstrating that the mentally ill or intellectually disabled are specifically targeted for the infliction of severe pain or suffering *in* detention, this was a permissible inference from

the record evidence about the discrimination that these individuals face in the criminal justice system. It is incumbent on the BIA to explain how the IJ's finding is illogical, implausible, or not supported by permissible inferences from the record. *See Rodriguez*, 683 F.3d at 1170.

Lastly, we note that the BIA's analysis of the likelihood of harm was also flawed because it analyzed the likelihood of harm by Mexican police and officials in mental health institutions separately. The BIA errs when it does not consider "the *aggregate* risk" that a petitioner faces if removed. *Cole*, 659 F.3d at 775. Guerra "need not prove that each group, treated individually, would more likely than not torture him." *Id.* "Rather, he must establish that, taking into account all possible sources of torture, he is more likely than not to be tortured, by or with the consent or acquiescence of the government, if returned to [Mexico]." *Id.* Thus, "[t]he BIA erred by treating each potential source of torture individually, never assessing [Guerra]'s overall risk of being tortured." *Id.*

## D.

Because the BIA applied the wrong legal standard to Guerra's claim, "the appropriate relief from this court is remand for reconsideration under the correct standard. . . ." *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006). Guerra argues that despite this ordinary remand rule, we should direct the BIA to grant CAT relief on remand because the agency has already fully considered the CAT claim and erroneously denied relief based on a misreading of the record. The cases Guerra cites, however, are not analogous to his situation. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1075, 1082 (9th Cir. 2015) (remanding for grant of relief because BIA's error

constituted a factual confusion over the definition of transgender identity, not a legal error involving the standard of review); *Edu v. Holder*, 624 F.3d 1137, 1147 (9th Cir. 2010) (same where it was uncontested that petitioner was tortured in Nigeria for her participation in political activities, and the BIA erroneously concluded that she could avoid torture by refraining from exercising her political rights).

Unlike in *Avendano-Hernandez* and *Edu*, the BIA's legal error here is not isolated to an aspect of Guerra's CAT claim that would lead us to grant relief outright. Where the BIA failed to apply the proper standard of review, we have generally vacated the agency's decision and remanded for the BIA to apply the appropriate standard of review. *See Reyes v. Lynch*, 842 F.3d 1125, 1142–43 (9th Cir. 2016); *Zumel*, 803 F.3d at 476–77; *Ridore*, 696 F.3d at 919, 922; *Rodriguez*, 683 F.3d at 1177; *Brezilien*, 569 F.3d at 414; *but see Vitug*, 723 F.3d at 1064.[6]

Although we do not remand to grant relief, we do note that many facts in Guerra's case are not in dispute. *Cf. Estrada-Martinez v. Lynch*, 809 F.3d 886, 897–98 (7th Cir. 2015) (noting undisputed facts). For instance, the BIA did

---

[6] Guerra's situation is also distinguishable from *Vitug*, where we decided that remand for reconsideration was unnecessary because there was no dispute that petitioner belonged to a protected particular social group of gay men from the Philippines, and he was presumed eligible for withholding of removal on the basis of a showing of past persecution. 723 F.3d at 1060, 1064–65. The government failed to rebut that presumption, leading us to conclude that "no reasonable factfinder" could come to a different conclusion regarding the grant of withholding. *Id.* at 1065–66. Conversely, Guerra has not testified to past instances of harm or torture, at least as it relates to his CAT application. *See Singh v. Whitaker*, 914 F.3d 654, 663 (9th Cir. 2019) ("Relevant considerations for a CAT claim include evidence of past torture inflicted upon the applicant[] . . . .").

not question the veracity of evidence about Guerra's mental health conditions and incapacity to take care of himself. The IJ found, and the BIA did not challenge, that Guerra will likely become homeless in Mexico and attract the attention of police or be institutionalized, or both, due to his "abnormal behavior," and that Guerra cannot safely and reasonably relocate within Mexico. The IJ found, and the BIA agreed, that there is evidence of regressive, primitive, and extremely harmful practices in Mexican mental health institutions, as well as evidence of harsh conditions and harm amounting to torture against detainees in Mexican prisons. All these findings appear cogent and well supported by evidence in the record. We nonetheless remand this case to the BIA to apply clear error review.

## IV.

For the reasons set forth above, we grant the petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

**PETITION GRANTED AND REMANDED.**