**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GRACIELA IRENE ARELLANO HERRERA,<br><br>            Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>            Respondent. | No.   19-72750<br><br>Agency No. A091-656-542<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 1, 2020
Seattle, Washington

Before:  McKEOWN and VANDYKE, Circuit Judges, and KENDALL,[**] District Judge.

Memorandum joined by Judge McKEOWN and Judge KENDALL;
Dissent by Judge VANDYKE

Petitioner Graciela Irene Arellano Herrera ("Arellano") seeks review of a

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, sitting by designation.

decision of the Board of Immigration Appeals reversing the Immigration Judge's ("IJ") deferral of removal pursuant to the Convention Against Torture ("CAT"). This court has jurisdiction to review the BIA's decision under 8 U.S.C. § 1252. We grant the Petition and remand to the BIA for it to apply the appropriate legal standard.

An IJ's finding with respect to the likelihood of future torture is a factual finding that the BIA can only reverse if the finding was clearly erroneous. *See Guerra v. Barr*, 974 F.3d 909, 915 (9th Cir. 2020) ("What is likely to happen to a petitioner if deported to a certain country is also a question of fact that the BIA may reject only for clear error."). Whether the BIA applied the correct standard of review is a question of law that this court reviews *de novo*. *Perez-Palafox v. Holder*, 744 F.3d 1138, 1143 (9th Cir. 2014) (citing *Ridore v. Holder*, 696 F.3d 907, 911 (9th Cir. 2012)). The court does not rely on the BIA's invocation of the clear error standard; rather, the court must review the BIA's decision "to determine whether the BIA faithfully employed the clear error standard or engaged in improper *de novo* review of the IJ's factual findings." *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012). The BIA engages in improper fact-finding when it "override[s] or disregard[s] evidence in the record and substitute[s] its own version of reality." *Ridore*, 696 F.3d at 917.

In assessing the likelihood of future torture, courts must consider "all evidence

2

relevant to the possibility of future torture," including, but not limited to: evidence of past torture inflicted on the applicant, evidence that the applicant could relocate to a part of the country of removal where she is not likely to be tortured, and evidence of gross, flagrant, or mass human rights violations within the country of removal. 8 C.F.R. § 1208.16(c)(3). The burden does not lie with the applicant to demonstrate that relocation within the proposed country of removal is impossible. *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1186–87 (9th Cir. 2020) (finding that the relocation analysis weighed in the applicant's favor where there was a "lack of affirmative evidence that there is a general or specific area within Mexico where [the applicant] can safely relocate" and where there was evidence that a cartel that persecuted the applicant operated "throughout much of Mexico").

The IJ considered all relevant evidence in her acquiescence analysis. She noted that the 2018 Human Rights Report for Mexico explains that cartels "were implicated in numerous killings, acting with impunity and at times in league with corrupt federal, state and local security officials." The IJ found the Report particularly important in this case because Arellano herself credibly testified that she had witnessed "with her own eyes and in her own experience the level of corruption that the local police in Tijuana engaged in with the cartel." Arellano further credibly testified that she did not reach out to authorities to report the torture that she and her uncle suffered at the hands of the cartel because she knew it "would not do any good"

3

given that she had seen the cartel and the police work in concert. The general evidence regarding cartel-police collusion in Mexico, combined with the specific events of collusion that Arellano witnessed and the cartel's prior torture of Arellano, led the IJ to conclude that Arellano would more likely than not be tortured with the acquiescence of government officials upon her return to Tijuana.

In its acquiescence analysis, the BIA did not properly employ the clear error standard of review. It failed to explain how it weighed the fact that Arellano and her uncle had both been tortured by the cartel in the past. The BIA also found Arellano's evidence of acquiescence less persuasive because she had not reported those previous incidents of "cartel assault and threats to the police or other public officials." But the BIA did not even mention Arellano's credible testimony explaining that she did not report the events to the authorities because she knew it would not do any good. Because the BIA disregarded this credible testimony and failed to explain how past torture of Arellano committed by an organization with known ties to the local police weighs in the acquiescence analysis, the BIA did not accurately conduct clear error review of the IJ's acquiescence findings.

The IJ also considered all relevant evidence in her relocation analysis. The IJ credited Arellano's testimony that the cartel, which Arellano declined to name for safety reasons, had a "far-reaching nature," with "a presence in Sinaloa, Michoacán, Chihuahua, Nayarit and other various locations around Mexico." The IJ found her

testimony that she did not believe she could safely relocate within Mexico because of the cartel's influence in other parts of the country to be credible. The IJ also considered a variety of other evidence, including that she had only ever lived in the United States since she was three days old, she lacked knowledge of Mexico, the only place in Mexico with which she is familiar is Tijuana, and she has no family or social ties in other parts of the country.

Although the BIA states that it reviewed the IJ's relocation analysis for clear error, it instead reweighed the evidence before the IJ pertaining to the national scope of the cartel. The BIA then inserted its own interpretation of the facts and concluded that because Arellano did not name the cartel, the cartel must not have a national scope in Mexico, so it must not therefore be unreasonable to expect her to relocate. By reweighing evidence regarding the possibility of internal relocation and refusing to credit Arellano's testimony about the far-reaching nature of the cartel, the BIA did not correctly apply clear error review. *See Ridore*, 696 F.3d at 917 (explaining that the BIA fails to apply the clear error standard of review where it "override[s] or disregard[s] evidence in the record and substitute[s] its own version of reality"). Where the BIA applies the wrong legal standard, "'the appropriate relief from this court is remand for reconsideration under the correct standard . . . .'" *Guerra*, 974 F.3d at 916 (quoting *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006)).

**PETITION GRANTED AND REMANDED.**[1]

---

[1] Arellano's motion for a stay of removal pending the adjudication of her petition for review (Dkt. Nos. 1 and 13) is denied as moot.

*Arellano Herrera v. Barr*
No. 19-72750

VANDYKE, Circuit Judge, dissenting:

In this case, the BIA vacated the IJ's deferral of Arellano's removal under the Convention Against Torture. To do so, it reversed two of the immigration judge's findings. My colleagues believe the BIA improperly engaged in de novo fact finding by "overrid[ing] or disregard[ing] evidence in the record and substitut[ing] its own version of reality." *Ridore v. Holder*, 696 F.3d 907, 917 (9th Cir. 2012). As to the BIA's first finding, I agree—the BIA erred by concluding Arellano failed to show that, if removed, the government officials in Tijuana would likely acquiesce to her torture.

But the majority also concludes the BIA flubbed clear error review by taking issue with the immigration judge's consideration of Arellano's ability to safely relocate within Mexico and avoid torture. Here I think the majority misapprehends what the BIA actually did, which was to clarify that "safe relocation" deserves greater *legal* weight in the overall calculus of whether a petitioner has met her burden. The BIA on this point did not "override or disregard evidence" or "substitute its own version of reality," *Ridore*, 696 F.3d at 917, but rather identified a legal error in the IJ's balancing of different regulatory factors that makes a difference in this case. And because approving the BIA's analysis of the relocation issue is a sufficient basis to deny the petition in its entirety, I must dissent.

1

# I.

To begin, the IJ never found that Arellano *couldn't* relocate somewhere within Mexico to avoid torture. Quite the opposite, the IJ concluded that she could. It's critical here to understand exactly what the IJ said and did. The IJ weighed the evidence that Arellano "*could relocate to somewhere else in Mexico*," against the other CAT factors,[1] and determined her ability to relocate was not "so strong as to counteract or counterbalance all other factors." The IJ assigned less *legal* weight to the fact that Arellano *could* relocate, and assigned considerably more weight to the other factors regarding the risk of her future torture.

On appeal, the BIA disagreed with the IJ's treatment of the relocation factor vis-à-vis the others. According to the BIA, "the immigration judge clearly erred … by *not properly considering* her ability to avoid torture by internal relocation" (emphasis added). This critique of the IJ's treatment of one factor relative to the others was not the BIA reweighing the *facts*. There is nothing *factual* in weighing, for example, the relative significance of past torture compared to the ability to relocate to avoid future torture; it is comparing apples and oranges. Whenever

---

[1] "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

2

decisionmakers apply a multi-factor balancing test incorporating different *policy* considerations, and determine the appropriate weight to apportion to each discrete factor, they are engaged in quintessential *legal* balancing. And it was the IJ's error in *that legal* analysis that the BIA criticized, not the IJ's factual conclusions.

It is of course true that "[w]hat is likely to happen to a petitioner if deported to a certain country is also a question of fact that the BIA may reject only for clear error." *Guerra v. Barr*, 974 F.3d 909, 915 (9th Cir. 2020). But when deciding to grant CAT relief, the dispositive question is "whether the alien is more likely than not to be tortured in the country of removal." 8 C.F.R. § 1208.16(c)(4). And whether the established facts meet the petitioner's burden is a question of law. *See Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014) ("Questions of law resolve the legal consequences of the underlying facts, i.e., whether the petitioner meets the legal requirements for the requested relief …."); *see also Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 591 (BIA 2015) ("[W]e will review de novo whether the underlying facts found by the Immigration Judge meet the legal requirements for relief from removal or resolve any other legal issues that are raised."). So here, the BIA wasn't "disregard[ing] evidence in the record and substitut[ing] its own version of reality." *Ridore*, 696 F.3d at 917. It was reviewing and correcting the relative under-allocation of weight the IJ afforded to the evidence that the petitioner could relocate, which, if given proper legal weight, would alter the ultimate determination

3

that Arellano met her burden. *Matter of Z-Z-O-*, 26 I. & N. Dec. at 590 n.3 (reaffirming the BIA's "authority to afford different weight to the evidence from that given by the Immigration Judge"). Again, ultimate entitlement to relief is a *legal* consideration, not a factual one.

The BIA concluded, as a matter of law, that the lack of evidence foreclosing safe relocation shouldn't be discounted so cursorily in the overall analysis of whether Arellano met her burden. It committed no error in doing so. *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) ("[T]he BIA is not precluded from reading § 1208.16(c)(3) as requiring a CAT petitioner to show that he is unable to safely relocate within the country of removal.").

## II.

Contrary to the majority's assertions, the BIA sufficiently explained why *the fact* that Arellano can safely relocate deserves greater weight than the IJ gave it. The BIA did not discuss the IJ's observations that Arellano lacked social and family ties in Mexico and had never ventured beyond Tijuana. This silence, the majority concludes, showed that the BIA disregarded relevant evidence.

That is wrong for several reasons. First off, the BIA is entitled to a presumption of regularity, *Fernandez v. Gonzales*, 439 F.3d 593, 603 (9th Cir. 2006), and need not painstakingly call out every piece of evidence the petitioners think important. *See Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004). The

4

BIA need only "announce its decision in terms sufficient … [to show] it has heard and thought and not merely reacted." *Id.* (quotation marks omitted). Naturally, the BIA discussed those facts relevant to its departure from the IJ's analysis, but "nothing in the record or the BIA's decision indicates a failure to consider all the evidence …." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). So the fact that the BIA only focused on its disagreements with the IJ is no reason to conclude it didn't fully consider (and necessarily agree with) the rest of the IJ's conclusions. After all, it isn't like the IJ's conclusions about Arellano's lack of ties to Mexico were particularly complicated or disputed—they are obvious on this record.

The BIA didn't specifically discuss those conclusions—not because it disregarded them—but because they are not relevant to the CAT relocation analysis. This is evident from reading the IJ's own relocation conclusion. The IJ did *not* conclude Arellano's lack of ties rendered her unable to safely relocate within Mexico. Nor did it conclude that it would be unreasonable for her to safely relocate within Mexico. Ultimately, the IJ concluded Arellano *could* relocate, notwithstanding her lack of ties to Mexico. The IJ discussed Arellano's lack of Mexican ties and evidently felt internal relocation was suboptimal, but *the IJ did not conclude that she could not relocate*. How then can we fault the BIA for not discussing evidence even the IJ implicitly acknowledged did not render Arellano unable to relocate? *See Guerra*, 974 F.3d at 914 (botching clear error review where

5

"the BIA[] fail[s] to evaluate the factual findings of the IJ *that were key to the IJ's holding*" (emphasis added; citation and quotation marks omitted)).

Second, Arellano's lack of ties to Mexico is really an argument against *removal generally*, not about her ability to *safely relocate* under CAT. Arellano's scant connections to Mexico have no bearing on her ability to *safely* relocate there. Convenience or comfort are not touchstones for safe relocation in the CAT context, as the regulatory text clearly shows. *Compare* 8 C.F.R. § 1208.16(c)(3)(ii) ("Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured"), *with* § 1208.16(b)(2) (in the withholding of removal context, whether "under all the circumstances, it would be reasonable to expect the applicant to" relocate to another part of the removal country).

Unlike asylum and withholding, there are no exceptions to relief once a petitioner has met her burden under CAT. *See Cole*, 659 F.3d at 770 ("[T]he policy against providing 'sanctuary for universal outlaws' … does not preclude deferral of removal under CAT" (citation omitted)). If the petitioner meets her burden, neither the agency nor this court have any discretion to deny relief. *See id.* But the standard one must meet to obtain CAT's absolute relief is accordingly very demanding. *See Kamalthas v. I.N.S.*, 251 F.3d 1279, 1283 (9th Cir. 2001) (CAT coverage "is narrower, however, because the petitioner must show that it is 'more likely than not' that … she will be tortured, and not simply persecuted upon removal to a given

6

country" (quoting 8 C.F.R. § 1208.16(c)(2))). So it's no surprise that the *safe relocation* factor under CAT doesn't include considerations of whether it would be convenient or comfortable for the petitioner to relocate. *See* 8 C.F.R. § 1208.16(c)(3)(ii).

Embracing the majority's argument—that a petitioner's lack of ties to her country of citizenship constitutes affirmative evidence that she *cannot* safely relocate anywhere in that country—unjustifiably conflates the "withholding of removal" inquiry with the more single-minded *safety* inquiry under CAT. *See id*. Neither the regulatory text nor CAT's all-or-nothing design permits such muddling.

The IJ's finding of Arellano's lack of social connections was irrelevant to the question of her safe relocation under the CAT. And the BIA's decision not to pass on this neither "highly probative [n]or potentially dispositive evidence" was thus perfectly appropriate. *Cole*, 659 F.3d at 772.

### III.

Arellano didn't name, either due to ignorance or fear, the cartel that tortured her in the past.[2] So the only evidence supporting the supposed "nationwide reach" of the unidentified cartel is Arellano's contradictory testimony. While the majority

---

[2] The majority's statement that "Arellano declined to name [the cartel] for safety reasons" distorts the record. The IJ never *found* that Arellano declined to name the cartel because she was afraid. And for good reason—her testimony paints a more ambiguous picture. At one point, after coaxing by the IJ, Arellano did say she was afraid to name the cartel. But elsewhere she testified "I never found out about the name." Ultimately, her testimony is inconsistent as to *why* she didn't name the cartel.

7

repeatedly emphasizes that the IJ found Arellano "credible," mere credibility doesn't mean a petitioner has met her burden. *See* 8 C.F.R. § 1208.16(c)(2) ("The testimony of the applicant, if credible, *may be* sufficient to sustain the burden of proof without corroboration.") (emphasis added). This is not a case where the BIA "disregard[ed] the IJ's findings and substitute[d] its own view of the facts." *Guerra*, 974 F.3d at 916 (quoting *Ridore*, 696 F.3d at 919). According to the IJ, Arellano "has intimate knowledge of this … large, well-known cartel," yet apart from naming four Mexican states where she believes the cartel operates, she provided no additional evidence that it operates in other parts of Mexico where she could otherwise safely relocate. In short, Arellano provided no evidence supporting that she was unable to safely relocate *anywhere* within Mexico—outside the few areas she identified. The "BIA is not precluded from" doing exactly what it did here: "reading § 1208.16(c)(3) as requiring a CAT petitioner to show that [s]he is unable to safely relocate within the country of removal." *Maldonado*, 786 F.3d at 1164.

Here again, the BIA did not disagree with the IJ's factual findings. It appears the IJ, too, thought Arellano had insufficiently established the cartel's nationwide reach. Although the IJ mentioned her testimony about the cartel, it never concluded that she couldn't relocate to avoid torture; it just gave the fact that she *could* safely relocate very little legal weight and proceeded to grant CAT relief.

8

## IV.

Ultimately, the key difference between the IJ's and the BIA's decisions in this case was the amount of weight each provided to Arellano's ability to relocate to avoid torture in Mexico. The IJ gave that factor less legal weight; the BIA insisted it should be given more. The BIA should have won that dispute, and we err today by siding with the IJ on a legal matter entrusted to the BIA's discretion. *See Matter of Z-Z-O-*, 26 I. & N. Dec. at 590 n.3; *see also Perez-Palafox v. Holder*, 744 F.3d at 1145.

I therefore respectfully dissent.