NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 19 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUIS ENRIQUE CHOPIN-RAMOS, AKA Luis Chopin, AKA Luis Enrique Chopinramos, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 20-70576 <br><br> Agency No. A204-447-702 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 5, 2021
Pasadena, California

Before: PAEZ, CALLAHAN, and HURWITZ, Circuit Judges.
Dissent by Judge PAEZ

Luis Enrique Chopin-Ramos, a native and citizen of Mexico, obtained

Deferred Action for Childhood Arrivals ("DACA") status, which was terminated

after a California conviction for driving under the influence and causing bodily

injury. An immigration judge ("IJ") then denied Chopin-Ramos's applications for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

asylum and withholding of removal but granted deferral of removal under the Convention Against Torture ("CAT"). The Board of Immigration Appeals ("BIA") reversed, finding the IJ's prediction that Chopin-Ramos would more likely than not be tortured with government acquiescence if returned to Mexico clearly erroneous. We deny Chopin-Ramos's petition for review of the BIA's CAT ruling.

1. Because an IJ's prediction that a petitioner will more likely than not be tortured by a foreign government or with that government's acquiescence if removed is a factual finding, the BIA must review it for clear error. *See Ridore v. Holder*, 696 F.3d 907, 915–16 (9th Cir. 2012). "[T]he BIA may find an IJ's factual finding to be clearly erroneous only if it is illogical or implausible, or without support in inferences that may be drawn from the facts in the record." *Guerra v. Barr*, 974 F.3d 909, 912 (9th Cir. 2020) (cleaned up).

The BIA found that the IJ clearly erred to the extent she implicitly found that a cousin who raped Chopin-Ramos two decades ago, when petitioner was six years old, was likely to harm him upon his return to Mexico. The BIA expressly noted the facts in the record that rendered such a predictive inference implausible, including that Chopin-Ramos was a child at the time of the rape, lived unharmed in Mexico for 6 years after the incident, has had no contact with the rapist since the incident, and does not know where the rapist is. The BIA did not engage in impermissible factfinding, but rather found that the predicate facts found by the IJ did not support

2

a reasonable inference that the cousin would torture Chopin-Ramos in the future with the acquiescence of the Mexican government.

2. Chopin-Ramos also claimed that he was more likely than not to be tortured if removed on account of his status as gay male in a same-sex marriage. But in challenging the BIA decision that the IJ's prediction of future torture was not supported by the record, Chopin-Ramos "does not point to any fact found by the IJ that was ignored by the BIA, or any fact found by the BIA that was not found by the IJ" other than the predictive inference. *Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014). In contrast to *Guerra*, the BIA acknowledged and accepted the "key factual findings on which the IJ based her conclusion," 974 F.3d at 914; including that there was discrimination and violence against homosexuals in Mexico, that LGBTQ individuals were mistreated in prison, and that "the government did not always investigate" crimes against homosexuals "especially outside of Mexico City." But the BIA concluded that these facts were insufficient to support an inference that Chopin-Ramos likely would be tortured with government acquiescence if returned to Mexico. The BIA noted that the IJ failed to make any individualized finding of specific intent to torture by any actor and that the record showed areas in Mexico, including Mexico City, to which Chopin-Ramos may be able to safely relocate. Thus, this is not a case in which the BIA "substitute[d] its own view of the facts" in finding "clear error." *See Ridore*, 696

3

F.3d at 919.

3.   The remaining issue is whether "*the facts found by the IJ (and that the BIA determines are not clearly erroneous)* meet the legal requirements for relief under the CAT." *See id*. at 915 (cleaned up).  They do not.

a.   Apart from the past rape by the cousin, which the BIA appropriately addressed for the reasons stated above, Chopin-Ramos's fear of future torture rests on country condition reports.  But, "[a]lthough the reports confirm that torture takes place in [Mexico], they do not compel the conclusion that [Chopin-Ramos] would be tortured if returned." *Almaghzar v. Gonzales*, 457 F.3d 915, 923 (9th Cir. 2006).  The BIA also cited evidence showing improved legal protections and increasing tolerance for same-sex marriages and LGBTQ individuals in various Mexican states, *see Lanza v. Ashcroft*, 389 F.3d 917, 936 (9th Cir. 2004) (denial of CAT relief on similar evidence), and reasonably concluded that Chopin-Ramos may be able to relocate within Mexico to avoid any feared torture, *see* 8 C.F.R. § 1208.16(c)(3)(ii).

b.   Nor does the record compel the conclusion that the government will acquiesce in any future torture.  *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (even assuming the petitioner would be tortured upon return, he must show "sufficient state action involved in that torture") (cleaned up).  There is no claim of government acquiescence in the rape.  The IJ cited reports that gays were tortured in prison and that police outside of Mexico City sometimes did not

4

investigate crimes against gays. But there is no evidence that Chopin-Ramos is likely to be incarcerated and no suggestion that he could not safely locate to an area, including Mexico City, where police investigate such crimes.

**PETITION FOR REVIEW DENIED**.

***Luis Chopin-Ramos v. Garland***, 20-70576
**Paez, Circuit Judge, dissenting:**

In my view, the Board of Immigration Appeals ("BIA") erred by failing to faithfully apply clear error review of the Immigration Judge's ("IJ") factual findings, including the IJ's predictive inference that Chopin-Ramos is likely to suffer torture with government acquiescence if he is deported to Mexico. Instead, the BIA impermissibly substituted its own view of and reweighed the facts. Therefore, I respectfully dissent from the majority's denial of Chopin-Ramos's petition for review of his claim for protection under the Convention Against Torture ("CAT").

The majority correctly observes that the BIA reviews for clear error the IJ's prediction whether Chopin-Ramos is more likely than not to suffer torture. In so doing, "the BIA cannot disregard the IJ's findings and substitute its own view of the facts." *Ridore v. Holder*, 696 F.3d 907, 919 (9th Cir. 2012). "Either it must find clear error, explaining why; or, if critical facts are missing, it may remand to the IJ." *Id.* The majority holds that the BIA appropriately determined that the IJ's factual findings were clearly erroneous because the IJ's findings "were insufficient to support an inference that Chopin-Ramos likely would be tortured with government acquiescence if returned to Mexico." **Maj. Disp. 3.** I disagree.

As the majority acknowledges, the BIA did not take issue with any of the predicate factual findings relied upon by the IJ. Indeed, the BIA expressly credited

1

the very factual findings that supported the IJ's grant of deferral of removal. Nonetheless, the BIA rejected the IJ's conclusion that those findings supported a predictive inference that Chopin-Ramos is likely to experience torture in Mexico.

But, in fact, the BIA legally erred because it impermissibly reweighed the factual findings and record evidence that supported the IJ's analysis and predictive inference. The IJ's inference that Chopin-Ramos is likely to suffer torture was based on the IJ's assessment of the aggregate risk posed to Chopin-Ramos, as demonstrated by the record evidence. Chopin-Ramos credibly testified[1] that he was raped as a child and that the rape was committed by a family member. Chopin-Ramos further testified that he fears the rapist will retaliate against him because he disclosed the perpetrator's identity to his family. Moreover, the IJ considered record evidence of country conditions showing that (1) crimes committed against LGBT individuals are neither investigated nor prosecuted in Mexico and police are often complicit in the persecution of the community, (2) according to survey data of LGBT individuals in Mexico, six in ten respondents knew an LGBT person murdered in the past three years, (3) over 200 murders of LGBT persons were reported between 2014-16,and (4) attacks against the LGBT community surged in response to legislation permitting same-sex marriage.

---

[1] The IJ found Chopin-Ramos credible, and the government did not contest this determination in its appeal to the BIA.

The BIA did not question the propriety or accuracy of any of the record evidence or of any of the IJ's predicate factual findings. Instead, the BIA made unsupported, conclusory assertions that the evidence did not support the IJ's determination that Chopin-Ramos carried his burden to show he was more likely than not to experience torture in Mexico. To do so, the BIA impermissibly "substitute[d] its own view of the facts." *Ridore*, 696 F.3d at 919.

First, the BIA discounted the weight of the rape that Chopin-Ramos experienced as a child and ignored Chopin-Ramos's testimony about his fear that the perpetrator would target him again. Instead of accounting for the context that Chopin-Ramos was raped by a family member and that he fears retaliation because he disclosed the rape and identity of the rapist to his family, the BIA focused on Chopin-Ramos's testimony that he lacked *personal* contact with the person who raped him to dismiss any possibility that Chopin-Ramos could face future harm by the rapist. Second, the BIA speculated that "increasing public tolerance of LGBT individuals in various Mexican states" makes it appear that Chopin-Ramos "may be able to relocate within Mexico." But the BIA does not point to record evidence to support that observation and disregarded country conditions evidence in the record to the contrary. And third, the BIA provided no basis for recasting record evidence of pervasive mistreatment and neglect of LGBT persons by Mexican police, as merely "some dismissive attitudes among police officers."

3

The criticisms that the BIA lodged against the IJ's findings and predictive inference amount to the BIA's preferred weighing of the evidence. This was error. "[T]he clear error standard does not allow the BIA to reweigh the evidence when the IJ's account of the evidence is plausible." *Guerra v. Barr*, 974 F.3d 909, 914 (9th Cir. 2020). Nowhere does the BIA explain why the IJ's account of the evidence is *implausible*. Instead, the BIA asserted a different view of the balance of the evidence. It may not do so. "[T]he BIA may not reverse an IJ's finding simply because it is convinced that it would have decided the case differently." *Id.* at 913 (quotation marks and citation omitted). "Where there are two permissible views of the evidence, the [IJ]'s choice between them cannot be clearly erroneous." *Id.*

Thus, I would grant Chopin-Ramos's petition for review because the BIA legally erred by failing to faithfully apply clear error review of the IJs factual findings. Because this error necessarily infected the BIA's review of the IJ's consideration of "all relevant evidence" related to Chopin-Ramos's application for CAT relief, *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015), I would remand to the BIA to conduct a proper review.