**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GERMAN PENALOZA HUATO et al., | No. 23-2077 |
| Petitioner, | Agency Nos.<br>A201-300-556 |
| v. | A201-300-557<br>A201-300-558 |
| PAMELA BONDI, Attorney General, | |
| Respondent. | MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 12, 2025**
San Francisco, California

Before: S.R. THOMAS, W. FLETCHER, and M. SMITH, Circuit Judges.

Petitioner German Penaloza Huato ("Penaloza"), a native and citizen of

Mexico, petitions for review of the Board of Immigration Appeals' ("BIA")

dismissal of his appeal of an Immigration Judge's ("IJ") denial of his applications

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

for asylum and withholding of removal.[1]  We have jurisdiction under 8 U.S.C. § 1252.  We deny the petition for review.

Where, as here, the BIA agreed with the IJ's reasoning and added some of its own, we review the BIA's decision and those parts of the IJ's decision upon which it relied.  *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021).  We review the agency's factual findings for substantial evidence and legal questions de novo.  *See Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020).  "In particular, we review denials of asylum, withholding of removal, and CAT relief for substantial evidence."  *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (cleaned up).  Those findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

Because the parties are familiar with the history of the case, we need not recount it here.

Substantial evidence supports the BIA's denial of asylum and withholding of removal on the grounds that Penaloza did not demonstrate the required nexus between the harm he experienced and a protected ground.  To prevail on an asylum or withholding of removal claim, an applicant must demonstrate that the

---

[1] Penaloza's wife and minor daughter are derivative beneficiaries of Penaloza's asylum application.

persecution was "on account of" a statutorily protected ground. *Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009). To meet this "nexus" requirement, an applicant for asylum must show that the protected ground was "at least one central reason" the applicant was persecuted, and for withholding of removal, the applicant must show that the protected ground was "a reason" for the persecution. *Garcia v. Wilkinson*, 988 F.3d 1136, 1146 (9th Cir. 2021); *see* 8 USC §§ 1158(b)(1)(B)(i), 1231(b)(3)(C).

We have recognized that "hazardous neutrality" can constitute a "political opinion," and therefore, can be a protected ground on which relief can be granted. *See Sangha v. I.N.S.*, 103 F.3d 1482, 1488 (9th Cir. 1997). However, the political neutrality "must be the product of [a] conscious, deliberate choice." *Id.* The petitioner must "show that this opinion was articulated sufficiently for it to be the basis of his past or anticipated persecution." *Id.* (quoting *Ramos-Vasquez v. I.N.S.*, 57 F.3d 857, 863 (9th Cir.1995)). In determining whether the persecution was "on account of" an individual's political opinion, "the persecutor's motive is 'critical' and the applicant must come forward with '*some* evidence of [motive], direct or circumstantial.'" *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)). In order to "establish that [the petitioner's] persecution was 'on account of' political opinion by

3

inference, [] the inference [must be] one that is clearly . . . drawn from facts in evidence." *Sangha*, 103 F.3d at 1487.

Here, the record does not compel the finding that Penaloza was targeted because of his neutrality, because there is no evidence in the record that the members of Knights Templar knew Penaloza held a neutral political opinion or attributed Penaloza's resistance to joining their gang to his neutrality. There is thus no evidence that the persecution Penaloza endured was motivated, to any degree, by Penaloza's neutrality.

Instead, the record includes evidence of two other reasons for why the Knights Templar persecuted Penaloza: (1) they wanted him to join their gang, and (2) they wanted to punish him for providing information to a rival gang. The first reason suggests that the Knights Templar were acting in furtherance of their own goals, rather than to persecute Penaloza for any views on neutrality he may hold. The second reason suggests the Knights Templar wanted to make sure Penaloza stopped assisting their rival gang and wanted to punish Penaloza for aligning with their rival, rather than persecute him for his views on neutrality.

Therefore, Penaloza failed to provide direct or circumstantial evidence to show that the Knights Templar persecuted him "on account of" his neutrality. The record thus does not compel the conclusion that Penaloza's neutrality was "a

4

reason" let alone a "central reason" for his persecution. Based on the record, it is equally likely that the Knights Templar acted for the two reasons identified above, which do not qualify as statutorily protected grounds for relief. The BIA's denial of Penaloza's applications for asylum and withholding of removal is therefore supported by substantial evidence.

**PETITION DENIED.**